Rogers W. CLARK, et al.

v.

AMERICA'S FAVORITE CHICKEN CO., et al.

No. 93–3029.

United States District Court, E.D. Louisiana.

March 25, 1996.

Stephen G. Bullock, Stephen H. Kupperman, Phillip A. Wittmann, Stone, Pigman, Walther, Wittmann & Hu, William David Aaron, Jr., Nancy Eleanor Graham, Brent Bennett Barriere, Bruce Victor Schewe, Phelps Dunbar, L.L.P., New Orleans, LA, Robert V. Seymour, Sallen, Sallen, Seymour & Sallen, Jeffrey J. Mayer, Eric J. Wexler, Amy L. Ryntz, Michael M. Jacob, Raymond & Prokop, Southfield, MI, for plaintiffs.

Steven W. Copley, Ernest Enrique Svenson, Martin E. Landrieu, Gordon, Arata, McCollam & Duplantis, New Orleans, LA, Peter J. Klarfeld, Brownstein, Zeidman & Lore, Washington, DC, Kenneth J. McIntyre, John A. Krsul, Jr., Dickinson, Wright, McKean & Cudlip, Detroit, MI, David B. Kaplin, Brownstone, Zeidman & Lore, Washington, DC, James C. Rubinger, Wiley, Rein & Fielding, Washington, DC, for America's Favorite Chicken Co.

James B. Irwin, V, Robert Ellsworth Durgin, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, LA, David F. Graham, Sidley & Austin, Chicago, IL, Eugene Driker, Barris, Scott, Denn & Driker, Detroit, MI, David B. Johnson, Sidney & Austin, Chicago, IL, for Canadian Imperial Bank of Commerce.

Richard Anthony Goins, Mark Raymond Beebe, Adams & Reese, New Orleans, LA, for Frank Belatti, Belatti Consulting Group, Ltd.

## MEMORANDUM AND ORDER

SEAR, Chief Judge.

### BACKGROUND

By Memorandum and Order dated February 7, 1996, I granted motions for summary judgment of defendants America's Favorite Chicken Company ("AFC") and Canadian Imperial Bank of Commerce ("CIBC"). Judgment dismissing plaintiffs' claims against these defendants was entered on February 9, 1996. On February 27, 1996, plaintiffs filed this "Motion for Reconsideration."

Plaintiffs' claims were dismissed because they failed to meet their burden on summary judgment of showing any genuine issue of material fact that would have deprived defendants of summary judgment on each of plaintiffs' claims under Louisiana law. Plaintiffs' allegations included breach of contract as to AFC; detrimental reliance/promissory estoppel, violation of the Louisiana Unfair Trade Practices and Consumer Protection Act, tortious interference with business relationships, and abuse of rights as to AFC and CIBC; and, as to CIBC, liability as principal for promises made by other defendants and as a conspirator with AFC. Plaintiffs submit that summary judgment should be recalled because I erred in applying Louisiana law instead of Michigan law. Plaintiffs also con-

tend that summary judgment on AFC's counterclaim for an accounting was improper in light of documents that were not previously submitted in opposition to summary judgment but which plaintiffs file now.

## Analysis

### A. Standard of Review

■ The Fifth Circuit recognizes that a motion to reconsider a dispositive pre-trial motion is analogous to a motion to "alter or amend the judgment" under Rule 59(e) of the Federal Rules of Civil Procedure or a motion for "relief from judgment" under Rule 60(b). *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir.1990). A motion for reconsideration is considered a Rule 59(e) motion if it is filed no later than ten days after entry of judgment; if it is filed after that time, it falls under Rule 60(b). Fed.R.Civ.P. 59(e); *Lavespere*, 910 F.2d at 173.[1]

■ Plaintiffs' motion was filed on February 27, 1996, the tenth day following entry of judgment, excluding weekends and the legal holidays of President's Day and Mardi Gras. *See* Fed.R.Civ.P. 6(a); LSA–R.S. 1:55(A)(3) (Mardi Gras a holiday in Orleans Parish when declared by ordinance); M–95–1321, City of New Orleans, December 14, 1995 (establishing holidays, including Mardi Gras, for City government in New Orleans for calendar year 1996). Thus, plaintiffs' motion is treated as a Rule 59(e) motion subject to the broad discretion of the district judge, who must give weight to the particular circumstances surrounding the motion. *Lavespere*, 910 F.2d at 174. That discretion is not limitless, however. *Id.* at 174. The task of the judge is to achieve a balance between the competing interests of finality of judgments

and the need to render decisions on the basis of all the facts. *Id.* *Lavespere* instructs that, as to omitted evidence, I must consider the reason for plaintiffs' untimely submission of documents, the importance of the omitted documentary material, the availability of the evidence at the time of the summary judgment motion, and the likelihood of prejudice to defendants. *Id.* Although *Lavespere* does not specifically speak to the issue raised by plaintiffs' argument on choice of law, in ruling on this aspect of the motion I will also apply the *Lavespere* factors. The choice-of-law issue is analyzed first.

### B. Choice of Law

In their motion, plaintiffs contend for the first time following hundreds of pages of briefing by all parties that Michigan law, not Louisiana law, applies to their claims. The record indicates that plaintiffs' former attorneys relied on Louisiana law in originally opposing defendants' motions for summary judgment in December 1994. Following the disqualification of these attorneys and the resetting of defendants' motions for summary judgment for November 1995, plaintiffs' present counsel specifically adopted the prior attorneys' memoranda in opposition and supplemented these briefs, never once referring to Michigan law.[2] In the face of this record, plaintiffs offer no reason for their delay in contending that Michigan law applies. Certainly this argument was available to them, as evidenced by the fact that they made references to Georgia law in their supplemental memoranda in opposition to summary judgment. *See* n. 2, *supra.* Indeed, choice of law was an issue in a prior ruling by another judge in this case.[3] I find that there

---

1. Rule 59(e) was amended effective December 10, 1995, to make the date of filing, not the date of service, the effective date for calculation of time under the Federal Rules of Civil Procedure. *See* 1995 Amendments, Advisory Committee Notes. *Cf. Lavespere*, 910 F.2d at 173 (discussing Rule 59(e) service requirement in effect prior to 1995 Amendment).

2. Plaintiffs' only reference to the law of any other state was to Georgia law, which the Court addressed in its Memorandum and Order. R.Doc. 285, p. 10, n. 10; p. 13, n. 13; p. 25, n. 16.

3. In ruling on a motion to dismiss, the prior judge held that, as to plaintiffs' claims of unfair trade practices and tortious interference with business relations, both Louisiana conflicts law and Louisiana substantive law applied. (R.Doc. 46.) Plaintiffs did not seek reconsideration of that decision. Although plaintiffs' present attorneys were not enrolled at that time, they are responsible for knowing what transpired in this case. U.L.L.R. 20.08.1E (effective October 31, 1995, and charging counsel for a party with the duty of being familiar with the record). Certainly, plaintiffs' present counsel should have been aware of the prior ruling, and, if they disagreed

was no impediment to plaintiffs' raising this issue earlier.

■ Even if Michigan law were to be considered, its importance is negligible because Michigan choice-of-law rules require application of Louisiana law. As the transferee court following a motion to transfer pursuant to 28 U.S.C. § 1404(a), granted by the Michigan court where this matter was originally filed, I must apply the choice-of-law rules of Michigan.[4] *Ferens v. John Deere Company,* 494 U.S. 516, 519, 110 S.Ct. 1274, 1277, 108 L.Ed.2d 443 (1990); *Van Dusen v. Barrack,* 376 U.S. 612, 639, 84 S.Ct. 805, 821, 11 L.Ed.2d 945 (1964). Michigan follows §§ 187 and 188 of *Restatement, Second, Conflict of Laws,* in determining which law applies. *Banek Inc. v. Yogurt Ventures U.S.A., Inc.,* 6 F.3d 357, 361 (6th Cir.1993) (citing *Chrysler Corporation v. Skyline Industrial Services, Inc.,* 199 Mich.App. 366, 502 N.W.2d 715 (1993)); *Chrysler Corporation v. Skyline Industrial Services, Inc.,* 448 Mich. 113, 528 N.W.2d 698, 702–03 (1995) (affirming appellate court's use of Restatement approach but reversing on application of law to facts).

■ In this case, the two franchise agreements at issue both contain choice of law clauses adopting Louisiana law.[5] Where the parties have resolved the choice of law by an express contractual provision, that term overrides any other choice of law except in two circumstances. *Id.* at 703–04. First, the contractual term applies unless "the chosen state has no substantial relationship to the parties, or when there is no reasonable basis for choosing the state's law." *Id.* at 704, citing *Restatement, Second, Conflict of Laws,* § 187(2)(a). Second, the chosen law applies

unless "application of the chosen state's law ... 'would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of a particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.'" *Chrysler Corporation,* 528 N.W.2d at 704, quoting *Restatement, Second, Conflict of Laws,* § 187(2)(b).

Here, the chosen state, Louisiana, has had a substantial relationship with the parties. Both franchise agreements were initially entered between plaintiffs Franchise Management Unlimited, Inc. ("FMU"), Rogers W. Clark, Jr. and Roger R. Burney and predecessor corporations of AFC in 1979 and 1986, respectively. Both of these predecessor corporations were Louisiana corporations with their principal places of business in Louisiana.[6] Further, following the merger of Popeyes Famous Fried Chicken & Biscuits and Church's Fried Chicken, Inc. ("Church's") in 1989, the resulting corporation was Al Copeland Enterprises, Inc. ("ACE"), a company that plaintiffs have conceded had its headquarters in Louisiana.[7] Following the bankruptcy of ACE, AFC emerged from reorganization, and for at least six months AFC was headquartered in Louisiana before moving to Georgia in May 1993.[8] The instant lawsuit was filed on March 18, 1993, while AFC was still headquartered here, and, although it did not initially allege breach of contract, alleged facts which form the basis for breach of contract and other claims later made in amended complaints, *i.e.,* that plaintiffs were harmed by marketing

---

with it in any manner, could have raised the issue in opposition to the summary judgment motions set in November 1995.

4. Although the order transferring this lawsuit to this district does not specifically state that the transfer was made pursuant to 28 U.S.C. § 1404(a), R.Doc. 1, defendants' motion was predicated on this statute. *See* R.Doc. 10 of original record from Eastern District of Michigan.

5. Both franchise agreements at issue contain the same choice-of-law provision, which reads: "This franchise agreement shall be construed under the laws of the state of Louisiana, which

laws shall prevail in the event of any conflict of laws." *See* Exhs. 1 and 2 attached to AFC's motion for summary judgment. (R.Doc. 151.)

6. *See* Franchise Agreements, pp. 1, attached as Exhs. 1 and 2 to AFC's motion for summary judgment. (R.Doc. 151.)

7. *See* defendants' memorandum in opposition to motion to dismiss filed by defendants Frank J. Belatti and Belatti Consulting Group, Ltd., pp. 5–6. (R.Doc. 232.)

8. *See* Declaration of Frank J. Belatti, pp. 2–3, attached to his motion to dismiss. (R.Doc. 201.)

policies of defendants AFC and CIBC that allegedly lessen and eliminate competition between Popeyes and Church's. Indeed, the specific allegations as to AFC and CIBC as set forth in the amended complaints are that they continued the dual-marketing strategy of ACE, which, as noted, had been headquartered here. Clearly, the facts show a substantial relationship with Louisiana and a reasonable basis for the contracting parties' choice of Louisiana law in the franchise agreements. Michigan's first exception to applying the parties' contractual choice of Louisiana does not apply.

The second exception asks whether Michigan has a materially greater interest in this matter or whether application of Louisiana law would undermine a fundamental policy of Michigan law. Plaintiffs' maintain that there is a policy inherent in Michigan franchise law based on a prohibition of any contractual term which would allow AFC or its predecessors to maintain a Church's franchise near a Popeyes franchise. However, Michigan law does not contain such a prohibition, much less such a policy. Prior to its amendment in 1984, a section of the Michigan franchise law provided that the department of commerce

> *may* prohibit any registration from becoming effective for the offer or sale of a franchise which contains a provision or provisions which ... [p]ermit the franchisor to establish a similar business or grant a franchisee the right to establish a similar business at a location within a geographical area designated as the exclusive territory in a franchise previously granted to another franchise in a currently effective agreement.

Mich.Comp.Laws Ann. § 445.1527(c) (amended 1984) (emphasis added).[9] Not only was the foregoing provision permissive and not mandatory but also it was effectively repealed in 1984. The amended version of § 445.1527 specifically sets forth provisions in a franchise agreement that are "void and unenforceable" but does not void any provision as in pre-amended § 445.1527(c). Thus, Michigan does not have a fundamental policy

against the contractual provisions of which plaintiffs complain. Even applying Michigan choice-of-law rules, the parties' choice of Louisiana law should be enforced.

As to the final *Lavespere* factor, the prejudice to defendants in allowing plaintiffs to rely on Michigan substantive law is enormous considering that plaintiffs have waited until this late date to rely on Michigan law.

Accordingly, I find that Louisiana law was correctly applied in ruling on defendants' summary judgment motions.

### C. Res Judicata

■ Plaintiffs also contend that the doctrine of *res judicata* compels the application of Michigan law to this case because a Michigan Circuit Court ruled that AFC's demand for a general release as a condition to a franchise store transfer violates Michigan franchise law.[10] The Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to "accept the rules chosen by the State from which the judgment is taken" and not "employ their own rules of res judicata in determining the effect of state judgments." *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 481–82, 102 S.Ct. 1883, 1898, 72 L.Ed.2d 262 (1982). Michigan law on *res judicata* has been stated as follows:

> The doctrine of res judicata applies not only to facts previously litigated, but also to points of law necessarily adjudicated in determining and deciding the subject matter of the litigation. Michigan has adopted the "broad" application of res judicata, which bars claims arising out of the same transaction that plaintiff could have brought but did not, as well as those questions that were actually litigated. The doctrine of res judicata applies equally to facts and law. The test for determining whether two claims arise out of the same transaction and are identical for res judicata purposes is whether the same facts or evidence are essential to the maintenance of the two actions.

**9.** The full text of this pre-amended statute is set forth in the "Historical and Statutory Notes" following Mich.Comp.Laws Ann. § 445.1527.

**10.** A copy of this judgment is included with the transcript of the Michigan court's oral ruling as Exh. O attached to plaintiffs' motion for reconsideration.

*Jones v. State Farm Mutual Automobile Ins. Co.,* 202 Mich.App. 393, 509 N.W.2d 829, 834 (Mich.Ct.App.1993) (citations omitted). Additionally, for *res judicata* to apply, the prior action must have been between the same parties or their privies, and the former matter must have been decided on the merits. *Sherrell v. Bugaski,* 169 Mich.App. 10, 425 N.W.2d 707, 708–09 (1988).

Plaintiffs argue that because Michigan law was applied in a lawsuit they filed contesting the validity of a provision of the franchise agreements not at issue in this lawsuit, *i.e.,* the release provision, Michigan law should be applied herein. They further contend that because AFC initially asserted that Louisiana law controlled but then withdrew that contention, defendants are bound by application of Michigan law.

■■■■ However, CIBC was not a party to the Michigan litigation, a fact which precludes application of *res judicata* to CIBC. *See Sherrell, supra.*[11] Additionally, the claims in the instant lawsuit and those in the Michigan suit for injunctive relief and declaratory judgment do not involve the same facts or evidence. My review of the transcript on summary judgment indicates that the question in the Michigan lawsuit involved whether AFC could demand a broad release from a franchisor under a section of the Michigan franchise law enacted in 1984 that is not even remotely at issue here. That matter also did not involve evidence or facts at issue here under the causes of action alleged by plaintiffs, including breach of contract, unfair trade practices, promissory estoppel or any other cause of action claimed. Thus, because *res judicata* is inapplicable, Michigan law is not applicable here by virtue of the prior lawsuit in Michigan between plaintiffs FMU, Burney and Clark and AFC.

## D. Late-filed Evidentiary Materials

■■■■ The next task is to apply the *Lavespere* factors to plaintiffs' request that I consider late-filed evidentiary materials in opposition to AFC's counterclaim for an accounting. Concerning the reason for this late filing, plaintiffs contend that the documents had been previously presented to their Michigan attorneys, who ended their representation after the transfer of this matter, and that they thought that the documents had been "furnished to the Court after the case was transferred...."[12] Plaintiffs further maintain that their newly hired lawyers were then disqualified by the former judge to whom this case was allotted "apparently while a response was being prepared to the accounting claim."[13] These statements fall woefully short of adequately explaining why these materials were not filed earlier. Nothing in the record indicates that these documents were "furnished to the Court." Additionally, plaintiffs' first set of Louisiana attorneys were not disqualified until late December 1994, at which time they had already filed an opposition memorandum to AFC's motion for summary judgment. This opposition addressed AFC's argument on its counterclaim in a conclusory, two-sentence footnote stating that AFC lacked any legal or factual basis for its claim.[14] Plaintiffs did not offer any other opposition. Even assuming that plaintiffs' former Louisiana attorneys did not have the documents, plaintiffs had ample opportunity to supply these new attorneys with this material between the time they enrolled and the new hearing date on AFC's motion. Yet, plaintiffs' new attorneys adopted the previously filed opposition memorandum and in a supplemental memorandum did not even mention AFC's counterclaim. Plaintiffs had two opportunities through two different sets of attorneys to oppose AFC's

---

**11.** . Plaintiffs also have presented no evidence that CIBC was in privity with AFC such that it was bound by the judgment, either under Michigan law or under federal rules of privity. *See Moore's Federal Practice,* Vol. 1B, ¶ 0.411[1].

**12.** Affidavit of Roger R. Burney, ¶¶ 4 and 6, attached to plaintiffs' memorandum in support of their motion for reconsideration.

**13.** *Id.,* ¶ 5.

**14.** R.Doc. 162, p. 66, n. 38, filed December 13, 1994, under seal. The previous judge disqualified plaintiffs' counsel on December 23, 1994. (R.Doc. 171.)

summary judgment on its counterclaim but chose not to do so.

For these same reasons, it is obvious that the documentation is not newly discovered evidence but evidence available to plaintiffs well before their various responses to summary judgment. Plaintiffs' argument that the documents were formerly given to their Michigan attorneys, without more, is insufficient.

As to the importance of the documents, even considering them, I find that AFC is entitled to an accounting. The settlement entered between the parties that forms the basis for the counterclaim provided that AFC's predecessors accepted $600,000.00 of preferred stock in satisfaction of FMU's obligations and that each year an amount "equal to *50% of the audited after tax profits of Franchisee ...* shall be allocated among all holders of the preferred stock on a share for share basis...." The newly submitted documents only show that FMU forwarded tax returns for the years 1987 and 1990 to AFC's predecessors. There is no indication that any audit of FMU's books was made or that tax returns or any other documentation for any other year was sent to AFC or its predecessors.[15] Thus, there are *no genuine* issues of *material* fact as to AFC's claim for an accounting for all the years at issue before FMU sold its assets, as indicated by other documents submitted by plaintiffs.

The prejudice to AFC in allowing plaintiffs to submit this new evidence is obvious. After briefing that spanned more than one year, with plaintiffs given more than one opportunity to respond to AFC's motion for summary judgment on its counterclaim, plaintiffs should not be allowed to reopen this matter on the basis of documents available to them for some time.

Finally, then, weighing the need to bring this litigation to an end against the need to render just decisions on the facts, *Lavespere,* 910 F.2d at 174, I choose not to reopen this case on the basis of evidentiary materials available to plaintiffs but not filed previously. This result strikes the proper balance be-

tween these competing interests given the record in this case.

### D.  Conclusion

I have reviewed plaintiffs' requests to apply Michigan law instead of Louisiana law and to consider newly advanced documentary materials in opposition to AFC's motion for summary judgment on its counterclaim and find that, under the factors set forth in *Lavespere,* both requests should be denied. Plaintiffs had ample opportunity to raise these issues prior to my ruling on summary judgment but, for reasons not sufficiently explained, apparently chose not to do so. Moreover, even considering these issues, they do not aid plaintiffs' cause.

Accordingly,

IT IS ORDERED that plaintiffs' "Motion for Reconsideration" is DENIED.

---

**15.** Plaintiffs attach a copy of FMU's 1991 tax return but there is no cover documentation indi-

cating that it was sent to any of AFC's predecessors.