FRANCHISE MANAGEMENT UNLIMITED, INC v AMERICA'S FAVORITE
CHICKEN

Docket No. 182662. Submitted September 5, 1996, at Detroit. Decided January 24, 1997, at 9:10 A.M. Leave to appeal sought.

Franchisees Franchise Management Unlimited, Inc., Robert Burney, and Rogers Clark brought an action in the Wayne Circuit Court against franchisor America's Favorite Chicken after the defendant refused to approve the plaintiffs' proposed transfer of the ownership of one of their franchises unless the plaintiffs, as required under the franchise agreement, released any and all claims against the defendant. In their action, the plaintiffs sought a declaration that, under § 27(g) of the Franchise Investment Law (FIL), MCL 445.1527(g); MSA 19.854(27)(g), their refusal to execute a release did not constitute good cause for the defendant to refuse to permit the transfer of the franchise. The plaintiffs also sought damages under § 5 of the FIL, MCL 445.1505; MSA 19.854(5), for alleged fraudulent and deceptive acts by the defendant. The parties stipulated the execution of a release that preserved the plaintiffs' claims under the FIL. On motions for summary disposition by the parties, the court, James J. Rashid, J., granted summary disposition for the plaintiffs with respect to the issue of good cause under § 27(g) and summary disposition for the defendant with respect to the claim for damages under § (5). The defendant appealed, and the plaintiffs cross appealed.

The Court of Appeals held:

1. Section 27(g) makes unenforceable a franchise agreement provision that permits a franchisor to refuse to permit a transfer of ownership of a franchise, except for good cause. Section 27(g) provides that good cause includes the failure of the franchisee to cure any default in the franchise agreement existing at the time of the proposed transfer. Here, at the time of the proposed transfer, the plaintiffs were in default of the franchise agreement, which required them to release any and all claims against the defendant before the defendant would be obligated to approve the proposed transfer. Thus, the defendant had good cause to refuse permission for the proposed transfer.

2. The release executed by the plaintiffs preserved their rights under the FIL and is not rendered unenforceable by § 27(b), MCL 445.1527(b); MSA 19.854(27)(b), which prohibits the waiver of franchisee rights under the FIL.

3. Section 5 prohibits fraud and deception in connection with the sale of a franchise. Section 31(1), MCL 445.1531(1); MSA 19.854(31)(1), provides a civil remedy of damages or rescission against a person who sells a franchise in violation of § 5. Here, the plaintiffs are not entitled to damages pursuant to §§ 5 and 31 because the unfair and deceptive acts they accuse the defendant of committing do not relate to a sale of a franchise by the defendant.

Affirmed in part and reversed in part.

1. FRANCHISES — TRANSFER OF OWNERSHIP — FRANCHISORS' DENIAL OF PERMISSION — GOOD CAUSE — FRANCHISE INVESTMENT LAW.

The failure of a franchisee to comply with a requirement under the franchise agreement that the franchisee release any and all claims not involving the Franchise Investment Law against the franchisor before the franchisor approves a transfer of the ownership of the franchise constitutes good cause for the franchisor to deny permission for the transfer without violating the Franchise Investment Law (MCL 445.1527[g][iv]; MSA 19.854[27][g][iv]).

2. FRANCHISES — FRAUDULENT AND DECEPTIVE ACTS — FRANCHISE INVESTMENT LAW — DAMAGES.

A franchisor, in denying permission for a transfer of the ownership of a franchise, is not engaged in the act of selling the franchise and therefore cannot incur liability for damages under the Franchise Investment Law for fraudulent and deceptive acts by a seller (MCL 445.1405, 445.1531[1]; MSA 19.854[5], 19.854[31][1]).

*Raymond & Prokop, P.C.* (by *Jeffrey J. Mayer*), for Franchise Management Unlimited, Inc., Robert Burney, and Rogers Clark.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Cynthia M. York*) and *Wiley, Rein & Fielding* (by *James C. Rubinger*), for America's Favorite Chicken.

Before: YOUNG, P.J., and TAYLOR and R. C. LIVO*, JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

TAYLOR, J. This appeal arises out of a dispute between a franchisor, defendant America's Favorite Chicken, and one of its franchisees, plaintiffs Franchise Management Unlimited, Inc., Robert Burney, and Rogers Clark, regarding defendant's insistence that plaintiffs release claims against it before defendant would approve the transfer of one of plaintiffs' franchises to a new owner.

Plaintiffs entered into a franchise agreement with defendant's predecessor permitting them to operate a Popeye's Famous Fried Chicken franchise on Greenfield Road in the City of Detroit ("store 280F") in 1980. The agreement for store 280F was one of several active franchise agreements between defendant and plaintiffs. In 1989, defendant purchased one of Popeye's competitors, Church's Fried Chicken, which operated franchises located near several of plaintiffs' restaurants. Soon thereafter, plaintiffs commenced an action against defendant asserting claims of fraud, unfair trade practices, antitrust violations, and other intentional wrongdoing stemming from allegations that defendant engaged in illegal and improper acts while operating its Church's franchises to the detriment of plaintiffs' Popeye's franchises. That action was pending in the United States District Court in Louisiana at the time the trial court issued its decisions in the case at bar.[1]

In July 1994, plaintiffs entered into an agreement to sell store 280F and sought defendant's approval of the transfer. Defendant invoked a provision of the

---

[1] Defendant's motion for summary judgment of the Louisiana action was granted while this appeal was pending. *Clark v America's Favorite Chicken Co*, 916 F Supp 586 (ED La, 1996); *Clark v America's Favorite Chicken Co*, 919 F Supp 985 (ED La, 1996) (denying reconsideration).

franchise agreement that required the franchisee to execute a general release of any and all claims against the franchisor before the franchisor would approve a sale of the franchise. Defendant demanded that plaintiffs execute a release of all claims, i.e., a release covering the seven existing franchises before it would approve the transfer. Upon intervention by the Michigan Attorney General, defendant proposed a modified release that did not encompass any claims plaintiffs had under the Franchise Investment Law (MFIL), MCL 445.1501 *et seq.*; MSA 19.854(1) *et seq.* Plaintiffs refused to sign the requested release because it would have required them to dismiss the claims they had pending in the federal court in Louisiana. Defendant refused to approve the transfer because plaintiffs would not provide a release.

Plaintiffs commenced an action in the Wayne Circuit Court on July 21, 1994, seeking, among other claims, a declaratory ruling that their failure to execute a release was not good cause under MCL 445.1527(g); MSA 19.854(27)(g) for defendant's refusal to approve the transfer (count I) and asserting a claim for damages under § 5 of the MFIL, MCL 445.1505; MSA 19.854(5), on the ground that defendant committed unfair and deceptive acts in connection with its attempted sale of the franchise (count VI). As a result of a settlement conference, and in order to allow the transfer to proceed, the parties entered into a stipulation dismissing the bulk of plaintiffs' claims upon plaintiffs' execution of a release relating only to non-MFIL claims regarding store 280F; the transfer ensued. Plaintiffs preserved their right to challenge defendant's demand for a release on the ground that it violated the MFIL and also preserved their claim for dam-

ages. Defendant agreed not to enforce the modified release unless and until the court found that the release was valid.

The parties filed cross motions for summary disposition with respect to counts I and VI pursuant to MCR 2.116(C)(10). With respect to count I, defendant argued that plaintiffs' failure to provide a release constituted good cause for its refusal to approve a transfer of a franchise and plaintiffs argued the contrary. The trial court ruled in plaintiffs' favor, determining that plaintiffs' failure to fulfill their contractual obligation to provide a release of claims was not good cause for defendant's withholding approval of a transfer. The court thus held that the release that plaintiffs had signed was not valid. Defendant appeals as of right, and we reverse. With respect to count VI, the trial court held that defendant had not engaged in any fraudulent or deceptive acts that would give plaintiffs a cause of action for damages under § 5 of the MFIL. Plaintiffs cross appeal, and we affirm.

I

Defendant contends that the trial court erred in holding that plaintiffs' failure to provide a release of claims was not "good cause" for its refusal to approve the transfer of the franchise. We agree.

A

The franchise agreement for store 280F provides that defendant "shall not unreasonably withhold consent to any transfer" of the franchise. The agreement further provides that before transfer, plaintiffs shall have "[e]xecuted a general release under seal, in a form satisfactory to Franchisor, of any and all claims

against Franchisor." After initiation of this action, the parties, by stipulation, narrowed the issue to whether defendant had a right to demand the release in connection with the transfer of the franchise. The release that plaintiffs ultimately signed waived all non-MFIL claims solely with regard to store 280F.

Under the terms of the parties' contract, defendant was entitled to demand a release of any and all claims as a condition of approving the transfer of the franchise. Thus, unless the provision is void and unenforceable under the MFIL, defendant was entitled to withhold approval because plaintiffs refused to release their claims. See *G & A Inc v Nahra*, 204 Mich App 329, 330; 514 NW2d 255 (1994) (the court must determine what the parties' agreement is and enforce it).

As a limitation on the general freedom to contract, the MFIL dictates that certain provisions contained within documents relating to franchises are void and unenforceable (even if they are freely negotiated). MCL 445.1527; MSA 19.854(27). Among these void and unenforceable provisions is:

> A provision which permits a franchisor to refuse to permit a transfer of ownership of a franchise, except for good cause. This subdivision does not prevent a franchisor from exercising a right of first refusal to purchase the franchise. Good cause shall include, *but is not limited to:*
>
> (i) The failure of the proposed transferee to meet the franchisor's then current reasonable qualifications or standards.
>
> (ii) The fact that the proposed transferee is a competitor of the franchisor or subfranchisor.
>
> (iii) The unwillingness of the proposed transferee to agree in writing to comply with all lawful obligations.

(iv) *The failure of the franchisee* or proposed transferee to pay any sums owing to the franchisor or *to cure any default in the franchise agreement existing at the time of the proposed transfer.* [MCL 445.1527(g); MSA 19.854(27)(g) (emphasis supplied).]

The construction of the statutory language "good cause" is a question of law that this Court reviews de novo. *Welch Foods, Inc v Attorney General,* 213 Mich App 459, 461; 540 NW2d 693 (1995); *Westchester Fire Ins Co v Safeco Ins Co,* 203 Mich App 663, 667; 513 NW2d 212 (1994). When interpreting a statute, this Court's objective is to effectuate the Legislature's intent. *Lorencz v Ford Motor Co,* 439 Mich 370, 377; 483 NW2d 844 (1992). If possible, effect must be given to every word and provision of the statute. The whole statute must be considered in order to achieve an harmonious and consistent statutory interpretation. *Weems v Chrysler Corp,* 448 Mich 679, 699-700; 533 NW2d 287 (1995). When the statute contains a definition of a term, that definition supersedes the common or dictionary definition. *Welch, supra* at 462.

The first question we must answer is whether plaintiffs' failure to provide the release fits within any of the four examples of good cause set forth in the statute.[2] We believe plaintiffs' failure to provide the contractually agreed-upon release fits within § 27(g)(iv). This section states that a franchisor has good cause not to approve a transfer if, at the time of the proposed transfer, the franchisee has failed to cure any default in the franchise agreement. Section XIII (A) of the franchise agreement provides that the franchisee

---

[2] See, generally, note, *Balancing a relationship—"Good Cause" termination of franchise agreements in Michigan,* 72 U Det Mercy L R 369 (1995).

shall be in default if it fails to substantially comply with any of the requirements imposed by the franchise agreement. One of the requirements of the franchise agreement was for plaintiffs to provide a release of any and all claims before defendant was obligated to approve a transfer. Plaintiffs refused to provide a release at the time of the proposed transfer. Thus, plaintiffs were in default under the franchise agreement, and under § 27(g)(iv), defendant had statutory good cause not to approve the transfer.

Assuming, arguendo, that plaintiffs' failure to provide a release was not good cause under § 27(g)(iv), we find that it otherwise provided good cause for defendant not to approve the transfer. *Welch, supra* at 462. Section 27(g) includes four specific examples of "good cause" but expressly states that good cause is not limited to the listed circumstances. Thus, in spite of the Legislature's partial definition of the phrase, this Court must still construe the phrase "good cause." See *Michigan Bell Telephone Co v Dep't of Treasury*, 445 Mich 470, 479; 518 NW2d 808 (1994) (when a term is defined by reference to what it includes, a construction is required that is broad enough to encompass other items not mentioned). This Court may therefore consult dictionary definitions in order to determine the meaning of the phrase. *Welch, supra* at 463. The phrase "good cause" "generally means a substantial reason amounting in law to a legal excuse for failing to perform an act required by law." Black's Law Dictionary (6th ed), p 692. The Michigan Supreme Court has noted the phrase "good cause" is difficult to define. In *Cummer v Butts*, 40 Mich 322, 325; 29 Am Rep 530 (1879), the Court concluded that the phrase "good cause," as

used by contracting parties in limiting the right to terminate an agency relationship, "has no frontier of meaning which can be defined." In the context of a statutory requirement of good cause to dismiss a teacher, the Court quoted a Massachusetts court's explanation of good cause as including "any ground which is put forward by the committee in good faith and which is not arbitrary, irrational, unreasonable, or irrelevant to the committee's task of building up and maintaining an efficient school system." *Nephew v Dearborn Library Comm*, 298 Mich 187, 196; 298 NW 376 (1941).

When reviewing the circumstances of a given case to determine whether good cause exists, this Court seeks to effectuate the Legislature's intent. *Lorencz, supra* at 377. MCL 445.1501; MSA 19.854(1) specifically states that the franchise "act shall be broadly construed to effectuate its purpose of providing protection to the public." The public presumably consists of franchisors and franchisees. Nevertheless, *General Aviation, Inc v Cessna Aircraft Co*, 13 F3d 178, 181 (CA 6, 1993), stated that the general purpose of the MFIL is to protect the rights of franchisees. Indeed, *Banek Inc v Yogurt Ventures USA, Inc*, 6 F3d 357, 362 (CA 6, 1993), described the MFIL as a "comprehensive and paternalistic" law reflecting the public policy of Michigan.

The good cause requirement centers on commercial reasonability. Cf. 62B Am Jur 2d, Private Franchise Contracts, § 549, p 465 (discussing "good cause" requirement for termination of franchise). We find that it is commercially reasonable for a franchisor to require a franchisee to resolve all non-MFIL disputes

the franchisee has with the franchisor before the franchisor approves a transfer of a franchise.

B

Plaintiffs assert, as an alternative ground for upholding the trial court's ruling, that the partial release they eventually signed was void and unenforceable under § 27(b) of the MFIL. This section declares void and unenforceable

> a requirement [in a franchise agreement] that a franchisee assent to a release, assignment, novation, waiver, or estoppel which deprives a franchisee of rights and protections provided in this act. This shall not preclude a franchisee, after entering into a franchise agreement, from settling any and all claims. [MCL 445.1527(b); MSA 19.854(27)(b).]

We reject plaintiffs' claim because the release plaintiffs signed did not deprive them of any rights or protections provided for in the MFIL, i.e., the release complied with § 27(b) because it excluded MFIL claims from its scope. Indeed, the language utilized by the Legislature necessarily suggests that releases that do not waive MFIL rights are permissible.

II

We now turn to plaintiffs' cross appeal of the trial court's order granting summary disposition of their claim for damages under § 5 of the MFIL. In granting defendant's motion for summary disposition of this claim, the trial court noted that defendant was entitled to request the release pursuant to a contractual provision and held that defendant had not engaged in an unfair practice. We affirm, but on different grounds.

Section 31(1) of the MFIL, MCL 445.1531(1); MSA 19.854(31)(1), barred plaintiffs from bringing a cause of action under § 5 of the MFIL, MCL 445.1505; MSA 19.854(5), because defendant was not selling or offering to sell a franchise at the time of the alleged improper conduct. Pursuant to § 31, a franchisor is only liable to a purchaser of a franchise for § 5 violations. Although defendant did not present this argument to the trial court, we consider it because the issue is a question of law and the facts necessary for its resolution are present. *Brown v Drake-Willock Int'l, Ltd*, 209 Mich App 136, 146; 530 NW2d 510 (1995).

Section 5 of the MFIL provides:

A person shall not, in connection with the filing, offer, sale, or purchase of any franchise, directly or indirectly:

(a) Employ any device, scheme, or artifice to defraud.

(b) Make any untrue statement of material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.

(c) Engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person. [MCL 445.1405; MSA 19.854(5).]

Section 31(1) provides a civil remedy for violations of § 5:

*A person who offers or sells a franchise in violation of section 5 or 8 is liable to the person purchasing the franchise for damages or rescission*, with interest at 6% per year from the date of purchase until June 20, 1984 and 12% per year thereafter and reasonable attorney fees and court costs. [MCL 445.1531(1); MSA 19.854(31)(1) (emphasis added).]

Plaintiffs contend that when §§ 31 and 5 are read together, they have a claim because the Legislature intended that § 5 prohibit conduct beyond the initial sale of the franchise. We disagree.

Section 31 creates a cause of action for "a person purchasing the franchise" against a "person who offers or sells a franchise in violation of section 5" of the MFIL. MCL 445.1531(1); MSA 19.854(31)(1). The statutory definitions of these terms supersede any common or dictionary definitions. For purposes of the MFIL:

> "Person" means an individual, corporation, a partnership, a joint venture, an association, a joint stock company, a trust, or an unincorporated organization. [MCL 445.1503(5); MSA 19.854(3)(5).]
>
> "Sale" or "sell" includes a contract or agreement of sale of, contract to sell, or disposition of, a franchise or interest in a franchise for value. [MCL 445.1503(8); MSA 19.854(3)(8).]
>
> "Offer" or "offer to sell" includes an attempt to offer to dispose of or solicitation of an offer to buy, a franchise or interest in a franchise for value. The terms defined in this act do not include the renewal or extension of an existing franchise where there is no interruption in the operation of the franchised business by the franchisee. [MCL 445.1503(3); MSA 19.854(3)(3).]

Giving the terms used in § 31 their defined meanings, this Court concludes that plaintiffs do not have a § 5 claim as a matter of law because the statute only imposes liability on a person who offers or sells a franchise in violation of § 5. In this case, defendant was not selling or offering to sell a franchise when plaintiffs claim it violated § 5. Further, plaintiffs were not the "person[s] purchasing the franchise," but rather were the persons selling the franchise. Given

the clear language of § 31, plaintiffs do not have a claim for § 5 violations.

Further, plaintiffs argue that § 31 should be read expansively to provide a cause of action against a franchisor for misconduct "in connection with" a sale even when the franchisee, not the franchisor, is the person selling the franchise. Plaintiffs contend that any other construction would lead to absurd results. We reject this argument. The statute limits claims to those brought against a "seller" who violates § 5 in connection with the sale. The Legislature's intent to restrict liability to conduct at the time of a sale is clear from its specific exclusion of renewals or extensions of a franchise agreement from the definitions of the terms "offer" and "offer to sell." MCL 445.1503(3); MSA 19.854(3)(3). Contrary to plaintiffs' assertion, this exclusion evinces the Legislature's intent that § 5 pertain to a seller's conduct during the sale of a franchise, but not to later acts by the franchisor when not a "seller." Accordingly, this Court finds that plaintiffs do not have a claim for damages because defendant's conduct did not occur when it occupied the position of a seller of the franchise. Therefore, the trial court properly granted summary disposition of plaintiffs' claim for damages under § 5 of the MFIL albeit for a different reason. *Glazer v Lamkin*, 201 Mich App 432, 437; 506 NW2d 570 (1993).

Plaintiffs contend that the statutory construction we are adopting leaves them without a remedy for acts that arguably violated § 5 because defendant is a "person" and defendant committed the complained of acts "in connection with" plaintiffs' sale of the franchise to a new franchisee. MCL 445.1505; MSA 19.854(5). Our refusal to read § 31 so expansively as

to allow plaintiffs a private cause of action is supported by § 34 of the MFIL, which provides:

> Except as explicitly provided in this act, civil liability in favor of any private party shall not arise against a person by implication from or as a result of the violation of a provision of this act or a rule or order hereunder. Nothing in this act shall limit a liability which may exist by virtue of any other statute or under common law if this act were not in effect. [MCL 445.1534; MSA 19.854(34).]

Because the Legislature clearly expressed its intent that the courts not imply a private right of action to remedy violations of the MFIL, we may not imply a private cause of action and must find that plaintiffs did not have a claim in the case at bar because they have no right of action under § 31 of the MFIL. Section 34 clearly holds that private causes of action may not be implied under the MFIL.[3]

Affirmed in part and reversed in part.

---

[3] We note that our holding arguably contradicts the holding of the Sixth Circuit Court of Appeals in *General Aviation, Inc v Cessna Aircraft Co*, 915 F2d 1038, 1043-1045 (CA 6, 1990), that a franchisee has a private right of action under § 27 of the MFIL. We note, however, that the Sixth Circuit Court of Appeals later questioned the correctness of this holding in *Geib v Amoco Oil Co*, 29 F3d 1050, 1059-1061 (CA 6, 1994). Recognizing that the Legislature's contrary intent was expressed in § 34, the Sixth Circuit Court of Appeals certified to the Michigan Supreme Court the question whether § 27 of the MFIL authorizes private actions, but the Michigan Supreme Court declined to answer the question. See *In re Certified Question*, 447 Mich 1216 (1994). Thereafter, the Sixth Circuit Court of Appeals followed its prior holding on the issue. *Geib v Amoco Oil Co*, unpublished opinion per curiam of the United States Court of Appeals for the Sixth Circuit, issued February 14, 1995 (Docket No. 92-2129). The Sixth Circuit Court of Appeals' interpretation of the MFIL is not binding on this Court. See *State Bd of Ed v Houghton Lake Community Schools*, 430 Mich 658, 675; 425 NW2d 80 (1988). Given the Legislature's clear intent expressed in § 34 of the MFIL, we decline to imply a cause of action for nonpurchasers of a franchise for violations of § 5.