OTERO v WARNICK

Docket No. 210659. Submitted January 19, 2000, at Detroit. Decided May 12, 2000, at 9:25 A.M. Leave to appeal denied, 463 Mich 903.

Anthony Otero brought an action in the Wayne Circuit Court against Allan J. Warnick, D.D.S., the chief forensic odontologist for the Wayne County Medical Examiner's Office, alleging damages as a result of both the defendant's gross negligence while investigating a murder case in which the plaintiff was a suspect and the defendant's testimony at a preliminary examination. The court, Kathleen MacDonald, J., granted summary disposition in favor of the defendant, finding that the public-duty doctrine was applicable and that the defendant, therefore, owed the plaintiff no duty of care. The plaintiff appealed.

The Court of Appeals held:

1. A county medical examiner is statutorily authorized to employ any person duly authorized by the examiner to assist in an investigation authorized and required by statute. The defendant was authorized by the medical examiner to assist in the investigation because of the special knowledge and experience the defendant brought to the case. Therefore, the defendant's only duty was to the medical examiner and to the state. The defendant fulfilled his duty by providing his expert opinion and testimony to aid in the investigation of the case. The Legislature has defined a medical examiner's duties, and nothing in the statutory scheme creates duties of a medical examiner or the examiner's duly authorized assistants to a criminal defendant.

2. The defendant would have owed no duty to the plaintiff even if the medical examiner's statute did not apply because the defendant's role in the investigation was plainly adversarial to the plaintiff's interests and the defendant's duty as a witness at the preliminary examination was owed to the court, not the plaintiff. A breach of the duty owed to the court does not give rise to a cause of action in tort by the adverse party. Summary disposition was properly granted under MCR 2.116(C)(8).

3. Because the defendant was a witness testifying during the course of judicial proceedings, his statements were absolutely privileged, provided they were relevant, material, or pertinent to the

issue being tried. The quasi-judicial immunity applies even though the defendant's examination was performed, and his opinion developed, out of court. Summary disposition was proper under MCR 2.116(C)(7).

Affirmed.

GOVERNMENTAL IMMUNITY — COUNTY MEDICAL EXAMINERS — GROSS NEGLIGENCE.
    A person who is not a licensed physician but has specialized qualifications and knowledge needed to assist a county medical examiner in investigations authorized and required by statute may be employed by the examiner for that purpose; such a person owes a duty to the examiner and the state, but does not owe a duty to a criminal defendant (MCL 52.201 *et seq.*; MSA 5.953[1] *et seq.*).

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Justin C. Ravitz* and *Patricia A. Stamler*), for the plaintiff.

*Edward Ewell, Jr.,* Wayne County Corporation Counsel, and *Ellen E. Mason,* Assistant Corporation Counsel, for the defendant.

Before: BANDSTRA, C.J., and HOLBROOK, JR., and FITZGERALD, JJ.

BANDSTRA, C.J. In this gross negligence action, plaintiff Anthony Otero, a former suspect in a murder case, appeals as of right from the circuit court's order granting summary disposition pursuant to MCR 2.116(C)(8) in favor of defendant Allan J. Warnick, D.D.S., the chief forensic odontologist for the Wayne County Medical Examiner's Office. We affirm.

I. BASIC FACTS AND PROCEDURAL HISTORY

In October 1994, Virginia Airasolo was sexually assaulted and murdered. Defendant performed an examination and concluded that wound pattern injuries on the body were consistent with human bite marks. Following plaintiff's arrest in connection with

the murder, he consented to a search and allowed defendant to take impressions of his teeth and to review his dental records. In his written report to the Detroit Police Department, defendant opined that some of the bite marks on Airasolo's body matched plaintiff's dentition. A warrant was issued charging plaintiff with first-degree murder and felony murder, and he was arrested and incarcerated. During plaintiff's preliminary examination on December 13, 1994, defendant testified regarding his findings, suggesting that plaintiff was the only person in the world who could have inflicted the bite marks on Airasolo's body.

On January 30, 1995, the Detroit Police Crime Laboratory released a supplemental report that concluded that plaintiff was excluded as a possible source of DNA obtained from vaginal and rectal swabs taken from Airasolo's body. In April 1995, following the issuance of the favorable DNA report, plaintiff—who by that time had spent five months in jail—was released after posting a $60,000 cash bond. At about the same time plaintiff obtained his release from jail, defendant solicited a second opinion from forensic odontologist Richard Souviron of Dade County, Florida. Souviron issued a report concluding that, while the injury patterns on Airasolo's body were consistent with human bite marks, the details of the injuries were too indistinct to be used to include or exclude any suspect. As a result of this second opinion, the charges against plaintiff were dismissed. Plaintiff subsequently sued defendant, alleging gross negligence.[1]

---

[1] As a governmental employee, Warnick was immune from tort liability while engaged in governmental functions if he was acting, or reasonably believed he was acting, within the scope of his authority, unless his con-

Defendant moved for summary disposition pursuant to MCR 2.116(C)(7) and (C)(8), arguing that he was entitled to absolute witness immunity; that, pursuant to the public-duty doctrine, he owed no duty to plaintiff; and that plaintiff's claim was barred by the statute of limitations. The circuit court granted the motion, concluding that the public-duty doctrine was applicable and that defendant, therefore, owed plaintiff no duty of care.

## II. STANDARD OF REVIEW

This Court reviews decisions regarding motions for summary disposition de novo to determine if the moving party was entitled to judgment as a matter of law. *UAW-GM Human Resources Center v KSL Recreation Corp*, 228 Mich App 486, 490; 579 NW2d 411 (1998). A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone; all factual allegations in support of the claim are accepted as true, as well as any reasonable inferences or conclusions that can be drawn from the facts. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999); *Kuhn v Secretary of State*, 228 Mich App 319, 324; 579 NW2d 101 (1998). The motion should be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery. *Maiden, supra* at 119; *Wade v Dep't of Corrections*, 439 Mich 158, 163; 483 NW2d 26 (1992); *Kuhn, supra* at 324.

---

duct amounted to gross negligence that was the proximate cause of the plaintiff's injury or damage. MCL 691.1407(2); MSA 3.996(107)(2). "Gross negligence" is "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(2)(c); MSA 3.996(107)(2)(c).

Similarly, under MCR 2.116(C)(7), summary disposition is proper if, even considering the complaint to be true, the claim is barred as a matter of law. *Maiden, supra* at 118-119.

### III. FAILURE TO STATE A CLAIM—LACK OF DUTY

An essential element of a negligence claim is the existence of a duty owed by the defendant to the plaintiff. *Smith v Kowalski,* 223 Mich App 610, 613; 567 NW2d 463 (1997). Whether a duty exists to protect a person from a reasonably foreseeable harm is a question of law for the court. *Maiden, supra* at 131; *Murdock v Higgins,* 454 Mich 46, 53; 559 NW2d 639 (1997). Summary disposition of a negligence claim is properly granted pursuant to MCR 2.116(C)(8) if it is determined that, as a matter of law, the defendant owed no duty to the plaintiff. *Smith, supra* at 613.

In granting summary disposition to defendant, the trial court applied the public-duty doctrine. See *White v Beasley,* 453 Mich 308, 316; 552 NW2d 1 (1996); *Reno v Chung,* 220 Mich App 102, 105; 559 NW2d 308 (1996), aff'd sub nom *Maiden, supra.* We affirm the decision to grant defendant summary disposition, but on a different basis—the Supreme Court's 1999 decision in *Maiden, supra.*[2]

In *Maiden,* our Supreme Court consolidated the appeal in *Maiden* that was from an unpublished order of the Court of Appeals and the appeal from the

---

[2] A decision granting summary disposition may be affirmed on the basis of reasoning different from the reasoning employed by the trial court. *Franchise Mgt Unlimited, Inc v America's Favorite Chicken,* 221 Mich App 239, 251; 561 NW2d 123 (1997). We also note that the Supreme Court's decision in *Maiden* was not available at the time summary disposition was granted to defendant on March 10, 1998.

Court of Appeals decision in *Reno, supra,* and affirmed this Court's decision in *Reno* that the plaintiff's claim failed as a matter of law because the defendant owed no duty to him. *Maiden, supra* at 113. However, our Supreme Court did not base its decision on the public-duty doctrine; rather, it looked to the statutory duties of a county medical examiner in determining that no duty was owed to the plaintiff murder suspect: "Because the Legislature has implicitly delineated the nature and scope of defendant's duties relative to criminal defendants, we need not determine whether an individual duty exists under the common law or whether the public duty doctrine of *White v Beasley* should be extended to the facts of this case." *Id.* at 130.

In determining that defendant Young A. Chung, M.D., a Wayne County assistant medical examiner, owed no duty to the plaintiff, Kenneth Reno, the Court relied on MCL 52.201 *et seq.*; MSA 5.953(1) *et seq.,* the statutory provisions delineating the powers and duties of a county medical examiner:[3]

> Under our statutory scheme, a county medical examiner must investigate the cause of death in all cases of persons who meet a violent death. MCL 52.202; MSA 5.953(2). Further, a medical examiner "may be required to testify *in behalf of the state* in any matter arising as the result of any investigation required under this act, and *shall testify in behalf of the state* . . . ." MCL 52.212; MSA 5.953(12) (emphasis added). Accordingly, our Legislature has defined a medical examiner's duties. Nothing in the statutory scheme has created duties to a criminal defendant; instead,

---

[3] The Court treated Chung as a county medical examiner in its analysis of the applicability of the statute, *Maiden, supra* at 130-132, although describing him as an "assistant medical examiner," *id.* at 116, a position not established or regulated by the statute.

the duty is owed to the state. Defendant thus communicated her medical findings to the prosecutor in fulfilling her statutory duty to investigate cases of violent death and to testify as a state's witness regarding the results of her investigation. While an injury to a wrongly accused criminal defendant from erroneous findings is foreseeable, the express language of the statute requiring medical examiners to testify on behalf of the state militates against imposing any duty on defendant Chung to plaintiff as a consequence of her incompetent medical findings and testimony. [*Maiden, supra* at 132.]

The position of county medical examiner is established and regulated by statute. See, e.g., MCL 52.201; MSA 5.953(1) (county medical examiners are appointed by county boards and must be licensed physicians). Plaintiff argues that because defendant is not a county medical examiner as defined by the statute,[4] the protection afforded by *Maiden* is unavailable. We disagree.

Plaintiff would have us read *Maiden* narrowly, and thus limit its analysis of the legislative delineation of the nature and scope of duties relative to criminal defendants as being applicable only to the county medical examiner and not to persons assisting the medical examiner in investigating deaths. We see no need or logic to limit *Maiden* in this fashion.[5] Con-

---

[4] The record is not clear regarding defendant's exact status beyond establishing that he worked in some capacity for the Wayne County Medical Examiner. The statute may (or may not) allow defendant, a nonphysician, to serve as a "deputy county medical examiner," compare MCL 52.201a; MSA 5.953(1a) with MCL 52.201c; MSA 5.953(1c), but there is no record evidence suggesting that he served in that capacity. Plaintiff argues that defendant was merely an independent contractor working for the county medical examiner. In any event, we read *Maiden* as applying to grant protection to defendant in whatever capacity he provided assistance to the county medical examiner.

[5] Plaintiff argues that footnote 14 of *Maiden* suggests such a limitation:

struing the statute as a whole, *Weems v Chrysler Corp*, 448 Mich 679, 699-700; 533 NW2d 287 (1995), we note that the county medical examiner is specifically authorized to designate persons who, like defendant, are not licensed physicians to serve as "investigators to assist . . . in carrying out the duties required by this act." MCL 52.201a(2); MSA 5.953(1a)(2). Duties are to be assigned to such investigators on the basis of the county medical examiner's determination regarding the qualifications (education, training, or experience) the investigator brings to this job. MCL 52.201a(2); MSA 5.953(1a)(2). One of the important duties statutorily imposed on county medi-

---

We disagree that we are essentially granting "absolute immunity to any government employee who has statutorily enumerated duties." *Post* at [142]. The statute applies only to medical examiners, and the scope of the statutory duty imposed on the medical examiner to the state is completely incompatible with a duty to a criminal defendant. As noted *supra*, n 12, we do not suggest that the statute grants absolute immunity in every case. The specific facts of *this* case militate against imposing a duty on defendant medical examiner for the benefit of plaintiff. [*Maiden, supra* at 132, n 14].

The referenced footnote 12 reads:

We do not mean to suggest that the statute, *infra*, delineates the scope of the medical examiner's duty in all cases. There may well be instances of misconduct on the part of a medical examiner that are not implicated by the statute. However, such a case is not before us today, and we need not speculate on facts not presented. [*Id.* at 130, n 12].

Reading footnote 14 in light of footnote 12, we conclude that *Maiden* was merely limiting its holding to cases where a medical examiner was allegedly grossly negligent in the methods and procedures surrounding a criminal investigation, and not suggesting that the same analysis would apply to other kinds of misconduct. This same limitation would apply with respect to the duty imposed on the authorized staff of a medical examiner. Under this analysis, *Maiden's* holding against imposing a duty for the benefit of a criminal defendant applies here because this case involves allegations of gross negligence in the course of a criminal investigation.

cal examiners is the investigation of "the cause and manner" of certain deaths. MCL 52.202; MSA 5.953(2). The statute specifically allows the county medical examiner to delegate to investigators duties associated with that investigation. MCL 52.205(2); MSA 5.953(5)(2) ("[t]he medical examiner may designate [an investigator] to take charge of the body, make pertinent inquiry, note the circumstances surrounding the death . . . .").

In sum, the statute specifically authorizes county medical examiners to employ nonlicensed physicians to assist in the investigation of deaths if the medical examiner determines that persons with specialized qualifications and knowledge are needed to assist in that investigation. Considering this legislative scheme, we see no reason to limit the analysis of *Maiden* simply to the appointed county medical examiner. To the contrary, the logic of *Maiden* would apply to any person duly authorized by the examiner to assist in an investigation authorized and, in fact, required by the statute. Accordingly, just as "[n]othing in the statutory scheme has created duties to a criminal defendant" on the part of the medical examiner, there are no such duties imposed on those persons hired as authorized by the statute to assist the examiner; "instead, [their] duty is owed to the state." *Maiden, supra* at 132. We conclude that the protection afforded a county medical examiner by *Maiden* extends to persons employed by the medical examiner to assist in the investigation of a death. The county medical examiner here employed defendant, an odontologist, to assist in the investigation of a crime where the victim had teeth-bite marks that might have helped establish the identity of the assail-

ant. Having been authorized by the medical examiner to assist in the investigation because of the special knowledge and experience he brought to the case, defendant's only duty was to the medical examiner and to the state, and defendant fulfilled that duty by providing his expert opinion and testimony to aid in the investigation of the offense. *Id.*

Thus, under the medical examiner's statute, defendant owed no duty to plaintiff. No duty was owed to plaintiff for a separate and independent reason as well. Apart from the statute, *Maiden* further concluded that, because the defendant "consulted with the prosecutor and later testified against plaintiff as the state's factual and expert witness at plaintiff's preliminary examination," her role was "plainly adversarial to plaintiff's interests." *Maiden, supra* at 133. The court noted precedents where it had "declined to impose a duty on an attorney to his client's adversary" and established that "the duty imposed on a witness is generally owed to the court, not the adverse party." *Id.* As a result, *Maiden* held that "a breach of the duty owed to the court does not give rise to a cause of action in tort by the adverse party." *Id.*

The same logic applies here. Defendant's role in the investigation was plainly adversarial to plaintiff's interests and defendant's duty as a witness at the preliminary examination was owed to the court, not to plaintiff. Applying *Maiden* to these facts, we conclude that defendant would have owed plaintiff no duty even if the medical examiner's statute was inapplicable.

For these reasons, there being no duty imposed on defendant for plaintiff's benefit, the gross negligence

claim fails as a matter of law. Summary disposition was properly granted pursuant to MCR 2.116(C)(8).

## IV. WITNESS IMMUNITY

Finally, to the extent that plaintiff's claim is based on the theory that defendant was grossly negligent in testifying against him at his preliminary examination, summary disposition was also proper under MCR 2.116(C)(7). Because defendant was a witness testifying during the course of judicial proceedings, his statements were absolutely privileged, provided they were relevant, material, or pertinent to the issue being tried. *Maiden, supra* at 133-134; *Reno, supra* at 106; *Couch v Schultz*, 193 Mich App 292, 294-295; 483 NW2d 684 (1992). This quasi-judicial immunity applies even though defendant's examination was performed, and his opinion developed, out of court. *Maiden, supra* at 134-135.[6]

## V. CONCLUSION

Accepting as true the allegations in plaintiff's complaint, it is apparent that defendant performed his tasks with respect to the Airasolo murder in an incompetent, if not reprehensible, manner. Plaintiff ends his brief to us with an impassioned plea:

> Defendant Warnick, for whatever reason, crossed the line between prosecution and persecution, turning a system of justice into a system of oppression. In so doing, he trampled upon the rights of Plaintiff and caused him enormous, horrific harm. Plaintiff now turns to you jurists, simply

---

[6] Because we have concluded that summary disposition was properly granted to defendant for the reasons stated, we need not consider defendant's other arguments in support of summary disposition.

seeking and demanding a fair trial in his quest for a measure of justice. No self-respecting system of justice would deny him access to the courts and to our cherished jury system.

We note that a substantially similar request was made in another case brought against defendant and appealed to our Court, which resulted in an unpublished opinion. *Amolsch v Warnick*, unpublished opinion per curiam of the Court of Appeals, issued April 27, 1999 (Docket No. 203198). As in *Amolsch*, we sympathize with plaintiff but conclude that, regardless of how badly defendant performed his investigation and the harm that resulted, plaintiff's claims are so clearly unenforceable as a matter of law that they cannot go to a jury. As stated in *Amolsch:* "We can reach no other conclusion . . . without sacrificing the logic and force of directly applicable precedent to the emotional demand of result and result only. This is a sacrifice that no self-respecting system of justice can, ever, afford to make and we will not—indeed, we cannot—make it."

We affirm.