# STATE OF MICHIGAN

# COURT OF APPEALS

DAVID L. GAVITT,

Plaintiff-Appellant,

v

ESTATE OF JOHN E. DEVRIES, by BRUCE
BORN, Personal Representative,

Defendant-Appellee.

UNPUBLISHED
August 10, 2017

No. 332369
Kent Circuit Court
LC No. 15-004940-NO

Before: HOEKSTRA, P.J., and MURPHY and K. F. KELLY, JJ.

PER CURIAM.

Plaintiff David L. Gavitt appeals as of right the circuit court's order granting summary disposition in favor of defendant Estate of John E. DeVries (the estate). We affirm.

In 1986, plaintiff was convicted of and sentenced on three counts of first-degree felony murder, arising out of a fire at plaintiff's home in which his wife and two children perished. The state charged that plaintiff had committed arson, intentionally setting the fire to his house that killed his family. This Court affirmed the convictions, *People v Gavitt*, unpublished opinion per curiam of the Court of Appeals, issued September 21, 1988 (Docket No. 93026), our Supreme Court denied leave to appeal, 432 Mich 907 (1989), and the United States Supreme Court denied plaintiff's petition for a writ of certiorari, *Gavitt v Michigan*, 494 US 1068; 110 S Ct 1788; 108 L Ed 2d 789 (1990). The prosecution's evidence against plaintiff in the criminal case consisted of, in part, the testimony of John DeVries, a technician at the Michigan State Police Crime Laboratory. DeVries had conducted a gas chromatography analysis and a "flame spread" test on various pieces of carpet from plaintiff's home, resulting in his opinion that gasoline had been used to start the fire. DeVries died in 1994. Years later, in June of 2012, a stipulated order was entered on plaintiff's motion for relief from judgment in the criminal case after he had presented expert testimony demonstrating serious and fatal flaws in DeVries's analysis and opinion. Plaintiff was released from prison, and in June 2014, he filed a complaint against DeVries, and eventually the estate, and numerous other individuals in the United States District Court for the Eastern District of Michigan, alleging various federal and state-law claims premised on plaintiff's alleged wrongful prosecution, conviction, and incarceration. The federal district court declined to exercise supplemental jurisdiction over the state-law claims, and they were dismissed without prejudice. In June 2015, plaintiff filed the instant action in circuit court, alleging two counts against the estate. The first count asserted various violations of the Michigan

-1-

Constitution, and the second count alleged a claim of gross negligence. Eventually, the circuit court denied plaintiff's motion to transfer the case to the probate court and granted the estate's motion for summary disposition on multiple grounds. Plaintiff appeals as of right.

## I. JURISDICTION

On appeal, plaintiff first argues that the circuit court erred in denying his motion to transfer the case to probate court, given that, although the circuit and probate courts had concurrent jurisdiction when the complaint was initially filed, the probate court came to obtain exclusive subject-matter jurisdiction in light of the estate's argument that it was entitled to summary disposition because, in part, the suit was time-barred under MCL 700.3803, which provision is contained in the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.* As best we can understand plaintiff's argument, he is asserting that the probate court's exclusive legal and equitable jurisdiction under MCL 700.1302(a)(*ii*) relative to matters relating to "[e]state administration, settlement, and distribution" was triggered when the estate decided to advance an argument under MCL 700.3803, which pertains to time deadlines for bringing claims against an estate, including claims "based on contract, tort, or another legal basis."[1] Plaintiff contends that "[i]n making that argument [under MCL 700.3803], [the estate] divested the [c]ircuit [c]ourt of jurisdiction over this dispute." The estate argues that, regardless of its invocation of MCL 700.3803, a probate court has neither exclusive nor concurrent jurisdiction over the claims alleged by plaintiff in his complaint.

" 'Whether the trial court had subject-matter jurisdiction is a question of law that this Court reviews de novo.' " *Bank v Mich Ed Ass'n-NEA*, 315 Mich App 496, 499; 892 NW2d 1 (2016) (citation omitted). Under MCL 600.605, "[c]ircuit courts have original jurisdiction to hear and determine all civil claims and remedies, except where exclusive jurisdiction is given in the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state." Pursuant to MCL 600.841(1)(a), a probate court has jurisdiction "conferred upon it under [EPIC]." And as mentioned above, EPIC provides a probate court with exclusive jurisdiction in regard to matters that relate to "[e]state administration, settlement, and distribution." MCL 700.1302(a)(*ii*). The term "settlement," as used in EPIC, "means, in reference to a decedent's estate, the full process of administration, distribution, and closing." MCL 700.1107(d).

We have carefully scrutinized MCL 700.3803 and find no language in the statute indicating or suggesting that only a probate court has the authority and jurisdiction to implement or apply the statute. MCL 700.3803 is effectively a statute of limitations for cases involving claims against a probate estate, and plaintiff has not given us a persuasive reason why a circuit court cannot apply MCL 700.3803 or why a circuit court would be divested of jurisdiction in a suit against an estate merely because a defendant estate raises an argument under EPIC. We are

---

[1] We note that under EPIC, statutory references to the "court" encompass "the probate court or, when applicable, the family division of circuit court." MCL 700.1103(j). In this case, for ease of reference and because the probate court is the relevant court for purposes of plaintiff's argument, we shall simply speak in terms of the probate court.

unaware of any authority that stands for the proposition that only probate courts have the authority to enforce EPIC provisions. Moreover, we fail to see the logic in plaintiff's argument that because the estate raised a defense under MCL 700.3803, the lawsuit turned into an action regarding a matter that related to "[e]state administration, settlement, and distribution," MCL 700.1302(a)(*ii*), although it was not such a lawsuit beforehand.

In *Williams v Grossman*, 409 Mich 67, 79-80; 293 NW2d 315 (1980), our Supreme Court observed that "[w]hile a person with a cause of action in negligence against a decedent may file a claim in the probate court, this is rarely, if ever, done[,]" and that "the statute makes 'it optional upon the part of a claimant to file a claim based upon a tort in the probate court or file a tort action in the circuit court.' " (Citations omitted.) The "statute" being referenced by the *Williams* Court was MCL 708.22, which was found in the Probate Code of 1939, with the Court noting that the new corresponding provision was found in the Revised Probate Code, specifically MCL 700.741. *Williams*, 409 Mich at 79-80 n 9. MCL 708.22 was repealed by 1978 PA 642, effective July 1, 1979, and MCL 700.741 was repealed by 1988 PA 222, effective January 1, 1989. And EPIC did not include a comparable or corresponding provision. See statutory disposition table. Examining MCL 700.1302 (probate court's exclusive jurisdiction) and MCL 700.1303 (probate court's concurrent jurisdiction), there certainly is no clear, precise, or express language indicating that a probate court has jurisdiction over a tort or constitutional claim against an estate under either statute. And neither party contends that the circuit court lacked jurisdiction when plaintiff's action was initially filed or that the action originally needed to be filed in the probate court. The only argument posed by plaintiff is that the circuit court lost its jurisdiction when the estate sought summary dismissal under MCL 700.3803. Again, plaintiff, who filed the suit in the circuit court, maintains that the probate and circuit courts had concurrent jurisdiction when the action was first filed, ostensibly under MCL 700.1303, while also arguing that the probate court later acquired exclusive jurisdiction under MCL 700.1302. The probate court could not have both exclusive and concurrent jurisdiction under the statutes, and plaintiff's argument that jurisdiction shifted during the litigation simply because an EPIC statute was raised as a defense is not sound. Limited to the argument proffered by plaintiff, we hold that the circuit court did not err in denying plaintiff's motion to transfer the action to the probate court. To be clear, we leave for another day resolution of the question whether a tort or constitutional claim against an estate constitutes a matter relating to the administration, settlement, and distribution of the estate, MCL 700.1302(a)(*ii*), such that a probate court would have exclusive jurisdiction over the lawsuit.

## II. CLAIMS BASED ON THE MICHIGAN CONSTITUTION

"[O]ur Supreme Court has clearly held that no inferred damages remedy for a violation of a state constitutional right exists against individual government employees." *Lavey v Mills*, 248 Mich App 244, 250; 639 NW2d 261 (2001), citing *Jones v Powell*, 462 Mich 329, 335; 612 NW2d 423 (2000). On the strength of this principle and *Jones*, the trial court summarily dismissed plaintiff's state constitutional claims contained in count I of the complaint, wherein plaintiff sought monetary damages. On appeal, plaintiff does not challenge the trial court's ruling under *Jones*. Accordingly, we affirm the dismissal of count I of plaintiff's complaint that alleged violations of the Michigan Constitution. See *Denhof v Challa*, 311 Mich App 499, 521; 876 NW2d 266 (2015) ("When an appellant fails to dispute the basis of a lower court's ruling, we need not even consider granting the relief being sought by the appellant."). Furthermore, *Jones*

and *Lavey* are controlling and require dismissal of plaintiff's request for money damages based on the claimed state constitutional infringements.

## III. GROSS NEGLIGENCE

We decline to address the issues concerning whether plaintiff's gross negligence count was time-barred under EPIC or the general Revised Judicature Act (RJA), MCL 600.101 *et seq.* In its written opinion and order, the trial court analyzed the issues concerning the period of limitations found in both EPIC and the RJA in relationship to the gross negligence claim, concluding that the suit was time-barred under both acts. However, the trial court also adopted the estate's other arguments in favor of summary disposition, finding them persuasive, and the estate had contended, amongst numerous arguments, that summary disposition was proper on the bases of witness immunity and the absence of a duty owed by DeVries to plaintiff. In *Maiden v Rozwood*, 461 Mich 109, 134; 597 NW2d 817 (1999), the Michigan Supreme Court ruled:

> Further, witnesses who testify during the course of judicial proceedings enjoy quasi-judicial immunity. This immunity is available to those serving in a quasi-judicial adjudicative capacity as well as those persons other than judges without whom the judicial process could not function. Witnesses who are an integral part of the judicial process are wholly immune from liability for the consequences of their testimony or related evaluations. Statements made during the course of judicial proceedings are absolutely privileged, provided they are relevant, material, or pertinent to the issue being tried. *Falsity or malice on the part of the witness does not abrogate the privilege.* The privilege should be liberally construed so that participants in judicial proceedings are free to express themselves without fear of retaliation. [Citations and quotation marks omitted; emphasis added; see also *Denhof*, 311 Mich App at 518-519.]

Here, there is no dispute that DeVries's testimony at plaintiff's criminal trial was relevant, material, and pertinent. And if falsity and actual malice cannot overcome the privilege, neither can gross negligence. Plaintiff argues that it was not DeVries's trial testimony, but his role in the investigation, that formed the basis for the gross negligence count. Plaintiff did in fact frame his complaint in such a manner, specifically in an attempt to avoid a defense of witness immunity, as conceded by counsel in plaintiff's appellate brief. Plaintiff's argument effectively stands for the proposition that DeVries's testing and analysis resulted in the decision to prosecute plaintiff in the first place. The first problem with this contention is that the prosecutor who handled the criminal case against plaintiff executed an affidavit indicating his belief that he would have charged and prosecuted plaintiff even without DeVries's work product. Second, and more importantly, the *Maiden* Court rejected a similar argument in the context of an autopsy performed by a medical examiner who eventually testified in a criminal prosecution against the plaintiff. *Maiden*, 461 Mich at 135. The Court noted that the autopsy was a necessary predicate of the medical examiner's testimony, that it was the testimony that led to the plaintiff's continuing detention, and that the plaintiff could not "avoid the protection of witness immunity by artful pleading." *Id.* In *Otero v Warnick*, 241 Mich App 143, 153; 614 NW2d 177 (2000),

this Court, relying on *Maiden*, observed that "[t]his quasi-judicial immunity applies even though defendant's examination was performed, and his opinion developed, out of court."[2]

Affirmed. Having fully prevailed on appeal, the estate is awarded taxable costs under MCR 7.219.

/s/ Joel P. Hoekstra
/s/ William B. Murphy
/s/ Kirsten Frank Kelly

---

[2] Also, with respect to the duty element of a negligence claim, the *Otero* panel held that an expert's role in a criminal investigation was plainly adversarial to the plaintiff's interests and that the expert thus owed no duty of care to the plaintiff. *Otero*, 241 Mich App at 152. Plaintiff here likewise fails to establish the existence of a duty.