*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TIM MADSEN,

        Plaintiff-Appellant,

v

KOHL'S DEPARTMENT STORES, INC. and
KIMBERLY SCHRADE,

        Defendants-Appellees.

UNPUBLISHED
June 10, 2021

No. 352974
Genesee Circuit Court
LC No. 18-112010-CZ

Before: GADOLA, P.J., and SAWYER and RIORDAN, JJ.

PER CURIAM.

Plaintiff brought this action against Kohl's Department Stores, Inc. ("Kohl's"), and its district manager, Kimberly Schrade, alleging that he was unlawfully terminated from his position as store manager of the Kohl's store in Flint. Plaintiff alleged claims for age and sex discrimination and hostile work environment under the Michigan Civil Rights Act (CRA), MCL 37.2101 *et seq.*, and disability discrimination under the Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 *et seq.* He further alleged that he was the subject of unlawful retaliation under both acts. Plaintiff appeals as of right the trial court's order granting defendants' motion for summary disposition under MCR 2.116(C)(10), and thereby dismissing all claims. We affirm.

## I. BACKGROUND

Plaintiff, who was born in 1962, was first hired by Kohl's in 2000 as an assistant store manager at the Flint store. He was promoted to store manager in 2001. Plaintiff received favorable performance reviews until the latter part of his career with Kohl's. In 2015, Kimberly Schrade became plaintiff's district manager. After concerns arose regarding plaintiff's work performance, he was placed on a Performance Improvement Plan (PIP) in January 2018. After an unfavorable 30-day follow-up review on February 27, 2018, plaintiff confronted two of his coworkers at the Flint store and questioned them about information they had provided to Schrade that had been included in the PIP documentation. During these confrontations, he remarked that he planned to secure legal counsel. The coworkers felt threatened and uncomfortable about these confrontations. One of them contacted Schrade, who in turn contacted Kohl's corporate Human Resources

-1-

Department, and a representative of that department contacted the coworker to discuss the situation. Plaintiff's employment with Kohl's was subsequently terminated on March 2, 2018, on the basis that he had acted improperly by confronting the coworkers and had violated Kohl's no-retaliation policy, ethical standards, and expectations of a manager. Plaintiff's position as store manager was ultimately filled by his counterpart at the Saginaw Kohl's store, Jeff Skias.

Plaintiff subsequently filed a three-count complaint against Kohl's and Schrade, alleging discrimination and retaliation on the basis of his age and sex in violation of the CRA, and disability discrimination and retaliation under the PWDCRA. Defendants moved for summary disposition under MCR 2.116(C)(10) arguing, with respect to plaintiff's age and sex discrimination claims, that plaintiff's employment was terminated for legitimate, nondiscriminatory reasons. Defendants also challenged whether plaintiff was disabled as contemplated by the PWDCRA. Defendants further argued that plaintiff had not engaged in protected activity to support his claims for unlawful retaliation. In response, plaintiff argued that there was sufficient evidence to demonstrate prima facie cases of retaliation and discrimination under the CRA and the PWDCRA, as well as hostile work environment harassment under the CRA. Following a hearing, the trial court granted defendants' motion and dismissed all of plaintiff's claims.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision to grant or deny a motion for summary disposition. See *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). The trial court granted defendants motion under MCR 2.116(C)(10). In *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019), our Supreme Court explained:

> A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim. *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. *Id*. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Johnson*, 502 Mich at 761 (quotation marks, citation, and brackets omitted).

## III. RETALIATION

Plaintiff first argues that the trial court erred by dismissing his claims for unlawful retaliation under the CRA and PWDCRA. We disagree.

MCL 37.2701 of the CRA provides, in pertinent part, as follows:

> Two or more persons shall not conspire to, or a person shall not:
>
> (a) Retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act.

-2-

To make out a prima facie case of retaliation under the CRA, a plaintiff must demonstrate:

> (1) that he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. [*Major v Village of Newberry*, 316 Mich App 527, 552-553; 892 NW2d 402 (2016) (quotation marks and citation omitted).]

In his response to defendants' motion for summary disposition, plaintiff asserted that he had engaged in protected activity under the CRA because he "opposed age [and] gender . . . discrimination against himself by complaining," and he pointed to his own handwritten notes documenting conversations with Lou Bellassai, a senior associate in Kohl's corporate Human Resources Department, in which he stated that he was being bullied by Schrade. In his notes, plaintiff reported that "I now feel totally harassed by the company and [by Schrade]." Plaintiff documented that Schrade met him at the door to the Kohl's store when he returned from surgery in 2016 to have a pacemaker implanted, and that during that interaction, Schrade "pointed out to me everything that was wrong." Plaintiff also documented a February 6, 2018 telephone call in which he informed Bellassai that Schrade, in December 2016, had been nasty to him following a tour of the store before plaintiff was scheduled to take a stress test, and then stated, "Good luck at your test." Plaintiff also asserted that he had engaged in protected activity by stating his intention to secure the assistance of counsel. Plaintiff alleged that defendants retaliated against him by imposing adverse employment consequences on him, such as by "holding him to a higher standard" than his younger, female counterparts, "writing him up for things" that his younger, female counterparts were not written up for, placing him on a PIP, and then ultimately firing him. However, plaintiff did not explain, and also fails to explain on appeal, how (1) his statement that he intended to secure counsel, or (2) his comments that he was being bullied by Schrade, were related to his opposition to defendants' alleged violations of the CRA. MCL 37.2701(a). That is, plaintiff does not explain how his statement to secure counsel, or his complaints about alleged bullying by Schrade, related to age or sex discrimination such that defendants' alleged retaliation against him for these acts could be considered retaliation for engaging in protected activity.

In *Mitan v Neiman Marcus*, 240 Mich App 679, 682; 613 NW2d 415 (2000), the plaintiff made two written complaints regarding alleged discrimination, but she did not suggest, state, or imply that the discrimination was related to her disability. This Court affirmed the trial court's order granting summary disposition in favor of the defendant on the plaintiff's claim for retaliatory discharge under the PWDCRA, concluding that the plaintiff had not engaged in protected activity under that act because she had not opposed a violation of the act. *Id.* Similarly, plaintiff here, while alleging that he engaged in protected activity by voicing his intention to secure legal counsel and complaining of bullying by Schrade, has not linked such activity to any opposition to an *alleged violation of the CRA*, which as relevant to this issue, prohibits discrimination on the basis of age and sex. Therefore, we affirm the grant of summary disposition in favor of defendants with respect to plaintiff's claim for unlawful retaliation under the CRA.

Turning to plaintiff's claim for unlawful retaliation under the PWDCRA, MCL 37.1602 provides, in pertinent part, as follows:

> A person or 2 or more persons shall not do the following:

-3-

(a) Retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act.

The elements of a prima facie case of retaliation under the PWDCRA are identical to those of a prima facie case of retaliation under the CRA. Thus, in *Aho v Dep't of Corrections*, 263 Mich App 281, 288-289; 688 NW2d 104 (2004), this Court described the elements of a prima facie case of retaliation under the PWDCRA as follows:

> To establish a prima facie case of unlawful retaliation under [MCL 37.1602(a)], a plaintiff must show: (1) that he engaged in a protected activity, (2) that this was known by the defendant, (3) that the defendant took an employment action adverse to the plaintiff, and (4) that there was a causal connection between the protected activity and the adverse employment action.

Here, the evidence, viewed in the light most favorable to plaintiff, failed to establish a prima facie case of retaliation under the PWDCRA. We agree that plaintiff did establish a genuine issue of material fact regarding whether he engaged in protected activity, given that he testified that after Schrade directed him to terminate the employment of Troy Kogut and Jameel Primm, he relayed his concerns about such action to Jennifer Kentish, the Human Resources Operation Manager, Skias, and Bellassai. While plaintiff was "not positive" whether he mentioned during his conversation with Bellassai that Kogut and Primm were disabled, he did recall that Bellassai directed him not to terminate their employment under any circumstances, because of the potential of a lawsuit, leading to the reasonable inference that Bellassai was aware they were disabled and was concerned about a potential disability discrimination claim.

With respect to Schrade's knowledge of plaintiff's protected activity, defendants cite *Mitan*, 240 Mich App 679, in which this Court, citing *McLemore v Detroit Receiving Hosp & Univ Med Ctr*, 196 Mich App 391; 493 NW2d 441 (1992), emphasized that under the PWDCRA, if an employer terminates a plaintiff's employment because of the plaintiff raising the "spectre of discrimination," prohibited retaliation occurs. However, *Mitan* is factually distinguishable because the plaintiff in that case, while raising complaints of harassment, did not state or imply that any discrimination had occurred as a result of her disability. *Mitan*, 240 Mich App at 682. In this case, viewed in the light most favorable to plaintiff, the evidence showed that plaintiff shared with other employees his concern that Schrade had directed him to terminate the employment of two disabled employees because of their disabilities. Plaintiff testified that after he shared his concerns with Kentish, Skias, and Bellassai, Schrade began to repeatedly threaten his job on a weekly basis, she told him that working at Kohl's was a privilege, and that he was required to stand up for his managers at the Flint store even if their decisions were wrong or incorrect. This evidence, viewed in the light most favorable to plaintiff, supports an inference that Schrade, as district manager, and Bellassai, as senior manager of associate relations in the corporate Human Resources Department, were aware of plaintiff's protected activity.

Plaintiff, having had his employment terminated, also suffered an adverse employment action. However, plaintiff failed to establish a genuine issue of material fact regarding whether his protected activity was causally connected to the adverse employment action. To prevail on

this element, it is not enough to merely show that the adverse employment action occurred after the protected activity. *West v Gen Motors Corp*, 469 Mich 177, 185; 665 NW2d 468 (2003). Instead, plaintiff was required to demonstrate that defendants took adverse employment action "*because of* plaintiff's protected activity." *Id*. (emphasis in original). See also MCL 37.1602(a) (prohibiting retaliation "because the person has opposed a violation of this act"). The evidence in this case indicated that Bellassai and his team made the decision to terminate plaintiff's employment because of plaintiff's conduct with Disbrow and Frick in February 2018, after his 30-day follow-up review of his PIP, and the evidence did not support an inference that this decision "was in some manner influenced by" plaintiff's refusal to follow Schrade's directive in 2016 to terminate the employment of Kogut and Primm, and then sharing his concerns about Schrade's directive with other Kohl's employees. While the termination did occur after plaintiff had engaged in protected activity under the PWDCRA, "[s]omething more than a temporal connection between protected conduct and an adverse employment action is required to show causation where discrimination-based retaliation is claimed." *West*, 469 Mich at 186. In this case, plaintiff's termination occurred approximately two years after the alleged protected activity related to Schade's directive. Moreover, although Schrade was involved in tendering information to the individuals in the corporate Human Resources Department who decided to terminate plaintiff's employment, she was not the ultimate decision-maker. More significantly, the evidence established that plaintiff's performance as store manager at Kohl's had been declining in the time period leading up to his termination, which led to him being placed on a PIP, and that it was his conduct in confronting Frick and Disbrow about what they had shared with Schrade, which caused them to feel threatened and uncomfortable working with plaintiff, that precipitated his termination from employment. Even if a plaintiff engages in "protected activity," this "does not immunize him from an otherwise legitimate, or unrelated, adverse job action." *Id*. at 187. Further, while the evidence does show that Bellassai, one of the decision-makers in the termination of plaintiff's employment, was aware that plaintiff had complained about Schrade's 2016 directive to terminate two disabled employees, the evidence also showed that Bellassai supported plaintiff's concerns about not firing the disabled employees, and there was no evidence that that matter continued to be an issue or in any way influenced the decision to terminate plaintiff's employment. Accordingly, plaintiff failed to establish a genuine issue of material fact regarding whether his protected activity in 2016 was causally related to his termination in 2018. Therefore, the trial court did not err by granting summary disposition of the PWDCRA retaliation claim under MCR 2.116(C)(10).

We disagree with plaintiff's argument that this Court's decision in *McLemore*, 196 Mich App 391, is dispositive of his retaliation claims under the PWDCRA and the CRA, and establishes that he was subjected to unlawful retaliation. In *McLemore*, the plaintiff filed an action alleging a retaliatory discharge. *Id.* at 394. Before the plaintiff filed her lawsuit, she had filed a complaint with the defendant hospital, alleging bias after she was not hired for an educational coordinator's position, and then filed a complaint with the Equal Employment Opportunity Commission (EEOC). *Id*. at 393-394. In the plaintiff's civil action, a jury found in favor of the plaintiff, concluding that her protected activity was a significant factor in the defendants' decision to lay the plaintiff off from her employment. *Id*. at 395. The defendants moved for judgment notwithstanding the verdict, which the trial court denied. *Id*. On appeal, the defendants argued that the evidence did not demonstrate that the decision to eliminate the plaintiff's job was motivated by anything other than economic concerns, and that because the plaintiff had not filed

her claim with the EEOC until April 2, 1984, anything that occurred before that date could not support the plaintiff's claim of retaliation. *Id.*

In rejecting the defendants' argument, this Court considered the United States Court of Appeals for the Sixth Circuit's decision in *Booker v Brown & Williamson Tobacco Co, Inc.*, 879 F2d 1304, 1312-1314 (CA 6, 1989), in which that court held that the Michigan CRA "did not protect from retaliation an employee who had merely expressed concern to his employer about possible discrimination." *McLemore*, 196 Mich App at 396. This Court disagreed with *Booker*, stating, in pertinent part, as follows:

> We strongly disagree with this interpretation of the [CRA]. *Regardless of the vagueness of the charge or the lack of formal invocation of the protection of the act, if an employer's decision to terminate or otherwise adversely effect an employee is a result of that employee raising the spectre of a discrimination complaint, retaliation prohibited by the act occurs.* We will not interpret the act to allow employers to peremptorily retaliate against employees with impunity. Doing so would be contrary to our state's policy of protecting employees who are about to report a suspected violation of law. See MCL 15.362. [*McLemore*, 196 Mich App at 396 (emphasis added).]

At issue in *McLemore* was what motivated the defendants' decision to eliminate the plaintiff's job. *Id.* While the plaintiff did not challenge the financial constraints that the defendant hospital was operating under, which necessitated the elimination of jobs, she maintained that her job was eliminated because she had alleged discrimination. *Id.* For instance, the plaintiff showed that "[f]rom the moment they learned [the] plaintiff was concerned about bias, [the] defendants began doing things that could make a case for terminating her employment." *Id.* at 397. The trial court thus held that the evidence supported an inference that the elimination of the plaintiff's position was retaliatory after she charged the defendants with sex discrimination, and this Court affirmed. *Id.* at 398.

In this case, defendants do not dispute that one of the reasons plaintiff's employment was terminated was because of his confrontation with other associates at Kohl's in February 2018, during which he told them that he planned to hire an attorney. However, that alone is not dispositive of plaintiff's retaliation claims under the PWDCRA and the CRA. As explained earlier, while plaintiff voiced his intention to secure legal counsel and complained of bullying by Schrade, he did not link this action to any opposition to an alleged violation of the CRA, or more specifically as relevant to this issue, to any alleged discrimination on the basis of age or sex. And with regard to plaintiff's argument concerning the applicability of *McLemore*, plaintiff does not explain how his 2018 statement that he planned to hire a lawyer was related to Schrade's 2016 directive to terminate the employment of the two disabled employees. Therefore, we reject plaintiff's argument that *McLemore* compels reversal of the trial court's order dismissing his retaliation claims.

We also reject plaintiff's argument that defendants have an unlawful policy that is inconsistent with *McLemore* and allows an employee to be disciplined for asserting his or her right to secure legal counsel. In support of this contention, plaintiff, in a cursory manner, references Kohl's Ethical Standards and Responsibilities Policy, which specifies that "[i]ntegrity is at the

-6-

heart of Kohl's," and emphasizes the importance of honesty and treating everyone with fairness and respect. The policy further provides that individuals who report an ethical concern in good faith will not face retaliation, and also specifies that all associates "have the right to work in an environment that is free from intimidation and harassment." Plaintiff does not identify any provision in this policy that prohibits or discourages employees from seeking legal counsel, and plaintiff does not further address how the policy undermines a person's decision to secure the assistance of counsel. Accordingly, plaintiff's claim that this policy in some manner undermined his right to seek the assistance of legal counsel fails for lack of factual support. Further, without evidence that Kohl's has such a policy, plaintiff's hypothetical arguments about how such a policy should be regarded under *McLemore* need not be considered further.

## IV. AGE, SEX, AND DISABILITY DISCRIMINATION

Plaintiff next argues that the trial court erred by dismissing his claims for age and sex discrimination under the CRA, and disability discrimination under the PWDCRA. We disagree.

Plaintiff alleged that defendants discriminated against him on the basis of his age and sex in violation of MCL 37.2202(1)(a) of the CRA, which provides as follows:

> An employer shall not do any of the following:
>
> (a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

If a plaintiff is able to put forth direct evidence of discrimination, then the proofs in the plaintiff's case proceed as with any other civil case. *Hazle v Ford Motor Co,* 464 Mich 456, 462; 628 NW2d 515 (2001). Our Supreme Court has described direct evidence as evidence, which if accepted as true, would lead to the conclusion that unlawful discrimination was, at a minimum, a motivating factor in the actions of the employer against the employee. *Id.* Our Supreme Court has observed that it is the rare occasion that a plaintiff is able to present direct evidence of discrimination. *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 607 n 33; 886 NW2d 135 (2016).[1] If unable to proffer such direct evidence, a plaintiff may still establish a claim for discrimination using circumstantial evidence by relying on the burden-shifting framework of *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973). *Hazle*, 464 Mich at 462. This burden-shifting framework allows a plaintiff to establish a rebuttable presumption of discrimination, from which the trier of fact could infer that he or she was subjected to discrimination. *Id.* This burden-shifting framework has been used in cases alleging age and gender discrimination under the CRA. *Id.* at 462-463.

---

[1] During his deposition, plaintiff acknowledged that Schrade had not said anything to him that led him to believe that she was discriminating against him on the basis of age, sex, or disability.

To establish a prima facie case of discrimination, the plaintiff must present admissible evidence to satisfy the following:

> (1) [the plaintiff] belongs to a protected class, (2) [the plaintiff] suffered an adverse employment action, (3) [the plaintiff] was qualified for the position, and (4) the job was given to another person under circumstances giving rise to an inference of unlawful discrimination. [*Hazle*, 464 Mich at 467.]

Defendants concede that plaintiff established a prima facie case of age discrimination because he was 55 years old when he was terminated, and in spite of his declining performance he was still qualified for the position as store manager. Further, he was replaced by Skias, who is six years younger. With respect to his claim of sex discrimination, plaintiff belonged to a protected class as a male, he suffered an adverse employment action because he was terminated from his employment, and defendants do not dispute that plaintiff was qualified for his position. However, there is no genuine issue of material fact that plaintiff was replaced by Skias, another male, which undermines plaintiff's claim that he was terminated under circumstances giving rise to an inference of discrimination on the basis of his sex.

Assuming that plaintiff established a prima facie case of discrimination on the basis of age and sex, Kohl's offered multiple legitimate, nondiscriminatory reasons for its decision to terminate plaintiff's employment. Once a plaintiff makes out a prima facie case, a rebuttable presumption of discrimination arises, but this does not end the inquiry because the defendant employer is then afforded the opportunity to "articulate a legitimate, nondiscriminatory reason for its employment decision in an effort to rebut the presumption created by the plaintiff's prima facie case." *Id*. at 463-464. In other words, once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to present evidence demonstrating that its employment decisions were taken in furtherance of legitimate, nondiscriminatory reasons. *Id*. at 464.

In this case, it is undisputed that shortly before plaintiff was terminated, he was given a PIP because of declining work performance. Moreover, after receiving an unfavorable review of his progress in addressing the requirements of his PIP, he confronted two of his workers, Frick and Disbrow, to question them about information they had provided to Schrade. These confrontations were viewed by the workers as unprofessional and made them feel uncomfortable, particularly about working with plaintiff. Plaintiff's notice of termination reflects that his employment was terminated because he had acted improperly with fellow associates at Kohl's, acted in a manner that conflicted with Kohl's interests, and violated Kohl's no-retaliation policy by confronting Frick and Disbrow after they shared confidential information with Schrade that was included in plaintiff's PIP, with plaintiff going so far as to rebuke Disbrow for sharing the information she did when plaintiff had undertaken efforts to secure a promotion for Disbrow. In his January 13, 2020 affidavit, Bellassai averred that plaintiff had acted in a retaliatory manner and treated his employees in a manner inconsistent with the expectations of a store manager by following up with Frick and questioning Disbrow about the contents of his PIP, informing them that he planned to hire a lawyer, and attempting to document his conversation with Disbrow by e-mail. Bellassai also averred that plaintiff violated Kohl's counseling and company guidelines, the retaliation and associate relations policies, and Kohl's ethical standards and responsibilities.

-8-

Once a defendant articulates a legitimate and nondiscriminatory reason for terminating a plaintiff's employment, the presumption of discrimination disappears and the burden shifts back to the plaintiff to demonstrate that unlawful discrimination was a motivating factor for the adverse employment action. In *Hazle*, 464 Mich at 465, our Supreme Court explained the burden of production on the plaintiff at this stage:

> At that point, in order to survive a motion for summary disposition, the plaintiff must demonstrate that the evidence in the case, when construed in the plaintiff's favor, is "sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff." *Lytle, supra* at 176. As we first held in *Town v Michigan Bell Telephone Co*, 455 Mich 688, 698; 568 NW2d 64 (1997), and then reaffirmed in *Lytle, supra* at 175-176, a plaintiff "must not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for [unlawful] discrimination." [Footnote omitted.]

At this juncture, the dispositive inquiry is "whether consideration of a protected characteristic was a motivating factor, namely, whether it made a difference in the contested employment decision." *Hazle*, 464 Mich at 466.

In this case, defendants presented ample evidence that plaintiff's employment was terminated because of continuing performance issues and conduct that was both unprofessional and in violation of Kohl's standards and policies, which affected the morale of workers he managed. On appeal, plaintiff fails to present a coherent legal argument explaining how genuine issues of material fact exist concerning whether defendants' proffered reasons for terminating his employment were a pretext for unlawful discrimination.

In a reply brief, plaintiff argues that Schrade's behavior after plaintiff's employment was terminated, whereby she asked Skias to terminate the employment of Kogut and Primm, demonstrates that discrimination was a motivating factor in terminating plaintiff's employment. Preliminarily, this post-termination conduct, to the extent it is relevant, would only be relevant to a claim of disability discrimination. Plaintiff fails to explain how it would be relevant to show that plaintiff's age or sex was a motivating factor for plaintiff's termination. In any event, we are not persuaded that it supports an inference of discrimination.

During his deposition, Skias recalled that when he took over the management of the Kohl's store, Schrade asked him to terminate the employment of Kogut and Primm. Skias was not comfortable with Schrade's direction, so he spoke to Bellassai about it. At that time, however, Kohl's was in the process of monitoring how many hours each employee was working, and Skias was informed, apparently by Schrade, that "if [employees] don't have open availability they can't work there." Kogut and Primm only worked one day a week, for four hours each. Skias recounted that Schrade told him that "[i]f employees didn't have open availability then they didn't need to be working at Kohl's." When Skias pointed out to Schrade that this policy would impact Primm and Kogut, Schrade responded "[t]hat [Primm and Kogut] need to go." Skias conceded that Schrade did not mention that Kogut and Primm were disabled when discussing the issue regarding their hours of availability. Skias also agreed that the "directive about removing employees with limited availability to work[] . . . applied across the board."

While this evidence reflects that Schrade did direct Skias to terminate the employment of Primm and Kogut, that decision was based on legitimate business reasons unrelated to their disabilities. Thus, the evidence does not support a conclusion that when Kohl's terminated plaintiff's employment, a motivation for doing so was unlawful discrimination, particularly on the basis of plaintiff's age or sex. *Hazle*, 464 Mich at 465. Instead, the evidence reflects that Kohl's was streamlining the hours that employees worked, apparently in a cost-cutting measure. Therefore, this evidence does not establish a genuine issue of material fact regarding whether defendant's legitimate and nondiscriminatory reasons for terminating plaintiff's employment were a pretext for age or sex discrimination. Accordingly, the trial court properly granted defendants' motion for summary disposition of the age and sex discrimination claims under MCR 2.116(C)(10).

Turning to plaintiff's claim of disability discrimination under the PWDCRA, a plaintiff "bears the burden of proving a violation of the PWDCRA." *Peden v Detroit*, 470 Mich 195, 203; 680 NW2d 857 (2004). In *Peden*, our Supreme Court explained that to establish a prima facie case of disability discrimination under the PWDCRA, a plaintiff must prove the following:

> (1) that [the plaintiff] is [disabled] as defined in the act, (2) that the [disability] is unrelated to [the plaintiff's] ability to perform his job duties, and (3) that [the plaintiff] has been discriminated against in one of the ways delineated in the statute. [*Id*. at 204 (quotation marks and citation omitted).]

See also *Jewett v Mesick Consol Sch Dist*, 332 Mich App 462, 471; 957 NW2d 377 (2020) (setting forth the elements of a prima facie case of discrimination on the basis of disability under the PWDCRA). If the plaintiff establishes a prima facie case of discrimination as contemplated by MCL 37.1202,[2] the burden will then shift to the employer to present evidence rebutting the plaintiff's evidence. See *Peden*, 470 Mich at 205.

In this case, plaintiff's prima facie case of disability discrimination under the PWDCRA is patently deficient because plaintiff concedes in his reply brief that he "is not disabled." Likewise, in his deposition, when asked if he had a disability as contemplated by the PWDCRA, plaintiff stated that he did not have a "long-term disability" and he was not claiming to have a disability. Moreover, in his brief on appeal, plaintiff does not address the substance of his disability discrimination claim under the PWDCRA. Although the trial court relied on different reasoning in granting defendants' motion for summary disposition of plaintiff's disability discrimination claim, we affirm the trial court's dismissal of this claim because of plaintiff's failure to establish a protected disability in the first instance. See *Otero v Warnick*, 241 Mich App 143, 147 n 2; 614 NW2d 177 (2000) ("A decision granting summary disposition may be affirmed on the basis of reasoning different from the reasoning employed by the trial court.")

---

[2] MCL 37.1202(1)(b) prohibits "discriminat[ing] against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability or genetic information that is unrelated to the individual's ability to perform the duties of a particular job or position."

## V. HOSTILE WORK ENVIRONMENT HARASSMENT

Finally, plaintiff argues that the trial court erred by granting summary disposition of his claim for age and sex-based hostile work environment harassment. We disagree.

MCL 37.2103(i) of the CRA provides, in pertinent part, as follows:

> Discrimination because of sex includes sexual harassment. Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:
>
> * * *
>
> (*iii*) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, *or creating an intimidating, hostile, or offensive employment*, public accommodations, public services, educational, or housing environment. [Emphasis added.]

Sexual harassment that falls under MCL 37.2103(i)(*iii*) "is commonly labeled hostile environment harassment." *Chambers v Trettco, Inc*, 463 Mich 297, 310; 614 NW2d 910 (2000). As plaintiff acknowledges, in *Downey v Charlevoix Co Bd of Rd Comm'rs*, 227 Mich App 621, 626; 576 NW2d 712 (1998), this Court, following its earlier decision in *Malan v Gen Dynamics Land Sys, Inc*, 212 Mich App 585, 587; 538 NW2d 76 (1995), reiterated that under the CRA, "harassment based on any of the enumerated classifications in [MCL 37.2202(1)(a)] is an actionable offense."

To establish a prima facie case of a hostile work environment, a plaintiff must provide proof of the following elements:

> (1) the employee belonged to a protected group;
>
> (2) the employee was subjected to communication or conduct on the basis of [age or sex];
>
> (3) the employee was subjected to unwelcome . . . conduct or communication;
>
> (4) the unwelcome . . . conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and
>
> (5) respondeat superior. [*Haynie v Michigan*, 468 Mich 302, 308; 664 NW2d 129 (2003), citing *Radtke v Everett*, 442 Mich 368, 382-383; 501 NW2d 155 (1993).]

-11-

First, an employee must demonstrate that he was a member of a protected class under the CRA, and that with regard to "same or similar conduct" the employee was treated differently than a person outside the protected class. *Radtke*, 442 Mich at 383. With respect to the second element, the employee must establish that but for his protected classification, he would not have been subjected to harassment. *Id*. Regarding the third element, an employee must present proof of being the subject of unwanted and unwelcome conduct or attention. *Id*. at 384. Turning to the fourth element, namely, whether the employee was subjected to "an intimidating, hostile, or offensive work environment," *Haynie*, 468 Mich at 308, the pertinent inquiry is whether the employee's workplace had an atmosphere " 'so infused with hostility toward members of one sex [or age group] that [it altered] the conditions of employment for them.' " *Radtke*, 442 Mich at 385, quoting *Lipsett v Univ of Puerto Rico*, 864 F2d 881, 897 (CA 1, 1988). Finally, as explained in *Radtke*, 442 Mich at 394, the following inquiry should guide the analysis of whether a hostile work environment existed:

> We hold that whether a hostile work environment existed shall be determined by whether a reasonable person, in the totality of circumstances, would have perceived the conduct at issue as substantially interfering with the plaintiff's employment or having the purpose or effect of creating an intimidating, hostile, or offensive employment environment. MCL 37.2103(h).[3]

Plaintiff failed to establish a prima facie case of hostile work environment harassment on the basis of his age or sex. Even accepting that plaintiff is a member of a protected class, he must still present evidence to establish that he was subjected to unwanted communications or conduct *because of his age or sex*. Plaintiff, in a cursory manner and without citation to the record, alleges that (1) he was held to a higher standard than his younger, female counterparts, (2) he was "ambushed" and criticized by Schrade about the condition of the Flint store when he returned to work after medical leave, (3) defendants placed him on a PIP plan after they had already decided to fire him, (4) defendants accused him of making Disbrow uncomfortable, and (5) defendants fired him without an investigation. However, plaintiff's argument on appeal is deficient because, as in the trial court, he does not elaborate or meaningfully explain how his age or sex influenced defendants' conduct and communications.

As noted, plaintiff concedes that he is not disabled, so there is no basis for concluding that he was subject to harassment because of any disability. With regard to the fact that plaintiff was placed on a PIP, and that he was ultimately terminated for his conduct toward Frick and Disbrow, there is nothing in the record to suggest that this course of action was related to plaintiff's age or sex. Instead, the record demonstrates that in the time period leading up to plaintiff being placed on the PIP, his work performance was declining, and he was placed on a PIP in an effort to correct and improve his performance issues. While the record reflects that Schrade, and perhaps others may have contemplated terminating plaintiff's employment before he was placed on the PIP, the submitted evidence does not establish a genuine issue of material fact with regard to whether Schrade's plan was based on plaintiff's age or sex.

---

[3] As a result of statutory amendments not at issue in this appeal, the relevant statutory provision is now MCL 37.2103(i)(*i*)-(*iii*).

Additionally, while plaintiff complains that he was held to a different standard than his female counterparts, and was ultimately disciplined for his conduct in confronting Disbrow and Frick regarding information that had been reported to Schrade and included in his PIP, plaintiff does not explain how this disciplinary action can be characterized as unwelcome conduct or communication that was intended to, or did in fact substantially interfere with his employment, or create a work environment that was intimidating, hostile, or offensive. Because plaintiff's claim that he was subjected to hostile work environment harassment on the basis of his age or sex was not supported by evidence, the trial court properly dismissed this claim.

## VI. CONCLUSION

The trial court correctly granted summary disposition in favor of defendants.[4] Accordingly, we affirm.

/s/ Michael F. Gadola
/s/ David H. Sawyer
/s/ Michael J. Riordan

---

[4] We note that our conclusion in this regard would remain unaffected by the particular causation standard applied to plaintiff's claims. See, e.g., *Hrapkiewicz v Wayne State Univ Bd of Governors*, 501 Mich 1067, 1067; 901 NW2d 654 (2018) (MARKMAN, C.J., *dissenting*) (explaining that Michigan civil-rights caselaw inconsistently refers to "because of" causation and "motivating factor" causation). See also *El-Khalil*, 504 Mich at 161 n 4 ("We need not explore today the precise contours of the 'causal connection' standard for purposes of MCL 37.2701(a).").